BRYANT, Judge.
 

 *766
 
 Where the evidence was insufficient to prove that defendant's presence as a sex offender in the parking lot shared by a daycare and other businesses was a location governed by N.C.G.S. § 14-208.18(a)(1), the trial court erred by denying defendant's motion to dismiss, and we reverse the judgment of the trial court as to the conviction in file no. 14 CRS 50721. Where the Fourth Circuit has ruled that subsection (a)(2) of N.C.G.S. § 14-208.18 is unconstitutionally overbroad in violation of the First Amendment, and the State asserts no argument to the contrary, we adopt the analysis of the Fourth Circuit's ruling and vacate defendant's conviction in file no. 14 CRS 50703. Where one conviction is reversed and another vacated, the essential and fundamental terms of defendant's plea agreement have become "unfulfillable," and we set aside the entire plea agreement and remand.
 

 In June 2006, defendant Charles Mack Anderson Jr. pled guilty to the felony offense of lewd and lascivious molestation and was placed on sex offender probation. When defendant relocated to Graham County, he registered with the Graham County Sheriff's Department on 25 October 2014 pursuant to the North Carolina Sex Offender and Public Protection Registration Programs codified within Chapter 14 of our General Statutes.
 

 *191
 
 When registering, defendant signed an acknowledgment that persons registered under the act were prohibited from the
 

 *767
 
 premises of any place intended primarily for the use, care, or supervision of minors, including ... child care centers, nurseries and playgrounds; ... [and] [w]ithin 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors....
 

 On 19 December 2014, Danny Millsaps, Sheriff of Graham County, was on routine patrol on Patton Street, which ran behind the Eagle Knob Learning Center, a daycare supervising approximately fifty-five children, from newborns to five-year-olds. At "the first residence behind the learning center," Sheriff Millsaps observed defendant outside chopping wood. By searching a police database, Sheriff Millsaps determined that defendant was a registered sex offender in visual and "close" proximity to a child care center. Sheriff Millsaps then informed defendant that he could not be at the residence due to its proximity to the child care center (hereinafter "daycare"). That afternoon, a law enforcement officer standing in the yard of the Patton Street residence observed two or three children playing on the daycare playground.
 

 During the evening of 28 December 2014, a Sunday, Sergeant Cody George was on routine patrol on southbound Highway 129, passing in front of the Eagle Knob daycare center, when he observed defendant's green SUV in the parking lot. Sergeant George testified that he was familiar with defendant, having seen him some eight to ten times before, and was familiar with defendant's SUV. Sergeant George recognized defendant as the driver and testified that defendant was approximately seventy-five feet from the daycare. On cross-examination at trial, Sergeant George acknowledged that the daycare was not open when he observed defendant in the parking lot, and that the other businesses adjacent to the daycare in the shopping mall, a tax preparation service and a hair salon, were also closed at the time. Sergeant George testified he believed a stand-alone restaurant, which also shared the parking lot, was closed on Sundays as well. When Sergeant George determined that defendant was prohibited from being on the premises of the daycare at all times and not just during business hours, he obtained a warrant for defendant's arrest.
 

 On 23 March 2015, a grand jury convened in Graham County Superior Court indicted defendant for being a sex offender unlawfully within 300 feet of a location intended primarily for the use, care, or supervision of minors (file no. 14 CRS 50703 (for being a sex offender within
 
 *768
 
 300 feet of a daycare)),
 
 [1]
 
 and for being a sex offender unlawfully on premises intended primarily for the use, care, or supervision of minors (14 CRS 50721 (for being a sex offender on the premises of a daycare)).
 
 [2]
 
 On 1 September 2015, defendant was indicted for failure to report a new address as required by the Sex Offender Registry Programs statutes,
 
 N.C. Gen. Stat. §§ 14-208.5
 

 et seq.
 
 (15 CRS 50072), and three counts of attaining habitual felon status (15 CRS 250-52). The matter came on to be heard before a jury in Graham County Superior Court during the 11 January 2016 criminal session, the Honorable Marvin P. Pope, Jr., Judge presiding. The State proceeded to trial by jury only on the charge under file no. 14 CRS 50721, being a sex offender on the premises of a daycare. The remaining charges were held in abeyance.
 
 *192
 
 At trial, defendant moved to dismiss the charge, arguing that the parking lot in which defendant was observed was shared by the daycare, a tax preparation service, and a hair salon, and that the State had failed to present evidence that the parking lot was a part of the daycare or that defendant was knowingly on the property of the daycare. Specifically, defendant argued that the State "failed to produce any evidence at all of ... defendant
 
 actually being on the premises
 
 of [the] day care." (Emphasis added). Defendant also argued that the State did not "produce[ ] any witness or define[ ] in any way that that parking lot was part of that premises of that day care, when that's a shared parking lot with the tax place, the haircutting place, the diner, the day care...." The trial court denied defendant's motion. The jury returned a verdict of guilty.
 

 After the jury verdict, the State was allowed, without objection, to amend the indictment against defendant charging failure to report a new address as a sex offender (15 CRS 50072). Defendant then pled guilty to the remaining charges: being a sex offender within 300 feet of a daycare (14 CRS 50703); failure to report a new address as a sex offender (15 CRS 50072); and three counts of attaining habitual felon status (15 CRS 250-52).
 

 *769
 
 In accordance with the jury verdict and guilty pleas, the trial court entered two judgments-one on the charge of being a sex offender on the premises of a daycare, combined with one count of attaining habitual felon status; and a second judgment on the charges of being a sex offender within 300 feet of a daycare, failure to report a new address, and two counts of attaining habitual felon status. For each judgment, defendant was sentenced to concurrent terms of 84 to 113 months. Defendant appealed from the judgment entered following the jury verdict on the charge of being a sex offender on the premises of a daycare (14 CRS 50721).
 

 _________________________
 

 On appeal, defendant challenges his conviction for being a sex offender on the premises of a daycare and petitions this Court for a writ of certiorari to review the remaining convictions to which defendant pled guilty.
 

 I. Appeal of Right-Conviction for Violation of
 
 N.C. Gen. Stat. § 14-208.18
 
 (a)(1)
 

 Defendant first argues the trial court erred in failing to grant his motion to dismiss the charge of being on the premises of a daycare (14 CRS 50721), in violation of N.C.G.S. § 14-208.18(a)(1) (2015). More specifically, defendant contends the State failed to present sufficient evidence that the parking lot shared by adjacent businesses was part of the premises of the daycare and thus, failed to establish the crime charged in the indictment. We agree.
 

 "We review denial of a motion to dismiss criminal charges
 
 de novo
 
 , to determine whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense."
 
 State v. Spruill
 
 ,
 
 237 N.C.App. 383
 
 , 385,
 
 765 S.E.2d 84
 
 , 86 (2014) (quoting
 
 State v. Mobley
 
 ,
 
 206 N.C.App. 285
 
 , 291,
 
 696 S.E.2d 862
 
 , 866 (2010) ). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion."
 
 State v. Trogdon
 
 ,
 
 216 N.C.App. 15
 
 , 25,
 
 715 S.E.2d 635
 
 , 642 (2011) (citation omitted). "We must consider evidence in a light most favorable to the State and give the State the benefit of every reasonable inference from the evidence."
 
 Mobley
 
 ,
 
 206 N.C.App. at 291
 
 ,
 
 696 S.E.2d at
 
 866 (citing
 
 State v. Parker
 
 ,
 
 354 N.C. 268
 
 , 278,
 
 553 S.E.2d 885
 
 , 894 (2001) ).
 

 Pursuant to North Carolina General Statutes, section 14-208.18(a),
 

 [i]t shall be unlawful for any person required to register under [the Sex Offender and Public Registration Programs],
 
 *770
 
 if the offense requiring registration is described in subsection (c) of this section, to knowingly be at any of the following locations:
 

 (1) On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to ... child care centers, nurseries, and playgrounds.
 

 *193
 
 (2) Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.
 

 (3) At any place where minors gather for regularly scheduled educational, recreational, or social programs.
 

 N.C. Gen. Stat. § 14-208.18
 
 (a)(1)-(3) (2011),
 
 amended by
 
 N.C. Sess. Laws 2016-102, § 2, eff. Sept. 1, 2016.
 
 [3]
 

 *771
 
 Defendant argues that because section 14-208.18(a)(1) is violated only by a sex offender's trespass on the premises of a place intended primarily for the use, care, or supervision of minors, the State failed to meet its burden of proof where the evidence showed only that defendant was in the parking lot of a strip mall containing a daycare and other businesses not intended primarily for the use, care, or supervision of minors. The crux of defendant's challenge regards the meaning of the word "premises" within section 14-208.18(a)(1), specifically whether the shared parking lot of a daycare center, adjoining businesses, and a stand-alone restaurant constitutes the "premises" of the daycare center.
 

 "Statutory interpretation properly begins with an examination of the plain words of the statute."
 
 State v. Braxton
 
 ,
 
 183 N.C.App. 36
 
 , 41,
 
 643 S.E.2d 637
 
 , 641 (2007) (quoting
 
 Correll v. Div. of Soc. Servs.
 
 ,
 
 332 N.C. 141
 
 , 144,
 
 418 S.E.2d 232
 
 , 235 (1992) ). "In interpreting statutory language, 'it is presumed the General Assembly intended the words to have the meaning they have in ordinary speech.' "
 

 Id.
 

 (quoting
 
 Nelson v. Battle Forest Friends Meeting
 
 ,
 
 335 N.C. 133
 
 , 136,
 
 436 S.E.2d 122
 
 , 124 (1993) ). "When the plain meaning of a word is unambiguous, a court is to go no further in interpreting the statute than its ordinary meaning."
 

 Id.
 

 (citation omitted). "But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will."
 
 Id.
 
 at 41-42,
 
 643 S.E.2d at 641
 
 (quoting
 
 Burgess v. Your House of Raleigh
 
 ,
 
 326 N.C. 205
 
 , 209,
 
 388 S.E.2d 134
 
 , 136-37 (1990) );
 
 see
 

 State v. Largent
 
 ,
 
 197 N.C.App. 614
 
 , 617,
 
 677 S.E.2d 514
 
 , 517 (2009) ("The paramount objective of statutory interpretation is to give effect to the intent of the legislature." (quoting
 
 In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.
 
 ,
 
 161 N.C.App. 558
 
 , 559-60,
 
 589 S.E.2d 179
 
 , 180-81 (2003) ).
 

 To begin, the term "premises" as used in N.C.G.S. § 14-208.18 is not defined in the
 
 *194
 
 statute or in N.C.G.S. § 14-208.6, which defines various terms as used in N.C.G.S. Chapter 14, Article 27A governing the Sex Offender Registration Program generally.
 
 See
 
 N.C.G.S. §§ 14-208.5
 
 et seq.
 

 Black's Law Dictionary
 
 provides the following definition, among others: "A house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses < smoking is not allowed on these premises>."
 
 Premises
 
 , Black's Law Dictionary (10th ed. 2014).
 
 *772
 
 However,
 
 Doe I
 
 (in which the U.S. District Court for the Middle District of North Carolina determined,
 
 inter alia
 
 , that subsection (a)(1) was not unconstitutionally vague,
 

 id.
 

 at 492
 
 [4]
 
 ), offers an illuminating comparison of subsections (a)(1) and (a)(2),
 
 see
 

 Carver v. Carver
 
 ,
 
 310 N.C. 669
 
 , 674,
 
 314 S.E.2d 739
 
 , 742 (1984) ("It is, of course, a fundamental canon of statutory construction that statutes which are
 
 in pari materia
 
 ,
 
 i.e.
 
 , which relate or are applicable to the same matter or subject, ... must be construed together in order to ascertain legislative intent." (citations omitted)), particularly regarding "premises":
 

 All three subsections of § 14-208.18(a) relate to defining the restricted zones and therefore should be construed together as part of a single legislative framework. In this way, the first two subsections can be read as covering single-use properties (subsection (a)(1)) and mixed-use properties (subsection (a)(2))....
 

 Specifically, subsection (a)(1) covers single-use or
 
 stand-alone
 
 facilities which are intended primarily for the use, care, or supervision of minors. The best examples are those included in the statute itself: "schools, children's museums, child care centers, nurseries, and playgrounds."
 
 N.C. Gen. Stat. § 14-208.18
 
 (a)(1). The entire grounds ("premises") upon which these specific facilities ("place") are located are off-limits under subsection (a)(1). In other words, for example, a restricted sex offender is prohibited from not only a school building itself,
 
 but also the parking lot of the school
 
 or a storage shed outside the school
 
 , so long as those areas are on the school premises
 
 .
 

 *773
 
 In the ordinary case, restricted sex offenders will not have a legitimate reason for being in these locations.
 

 In contrast, subsection (a)(2) is focused on mixed-use facilities and locations intended primarily for the use, care, or supervision of minors when the location is not on property that is primarily intended for the use, care, or supervision of minors. In the ordinary case, restricted sex offenders may have very legitimate reasons for being on properties that include smaller portions dedicated to minors. Such reasons might include shopping, eating, exercising, attending religious services, or any other of the myriad activities in which humans engage. By drawing this distinction and including the 300-foot buffer zone, the General Assembly addressed the competing interests of allowing restricted sex offenders to go to locations where they have reason to be and keeping restricted sex offenders away from locations dedicated to minors. Restricted sex offenders are therefore permitted to go on premises that may have portions dedicated to the use, care, or supervision of minors, but they can only go on those parts of the premises which are at least 300 feet away from those portions dedicated to minors.
 

 *195
 
 ....
 

 In summary, subsection (a)(1) applies where the
 
 place and premises
 
 in question are
 
 both
 
 primarily intended for the use, care, or supervision of minors. Restricted sex offenders are barred from the
 
 entire premises
 
 under subsection (a)(1). However, subsection (a)(2) applies where the premises in question is
 
 not
 
 intended primarily for the use, care, or supervision of minors,
 
 but a portion of that premises
 
 (the "place") is intended primarily for the use, care, or supervision of minors.
 
 Restricted sex offenders can go onto the premises, but they cannot go within 300 feet of the portion of the property intended primarily for the use, care, or supervision of minors
 
 (
 
 i.e.
 
 , the "place").
 

 Because subsection (a)(2) includes the 300-foot buffer zone but subsection (a)(1) does not, a restricted sex offender needs to be able to distinguish between (a)(1) and (a)(2) locations. Otherwise, the sex offender might believe that he or she is properly within 300 feet of an
 
 *774
 
 (a)(1) location (which is permitted) when in fact he or she is impermissibly within an (a)(2) 300-foot buffer zone.
 
 Though there will be marginal cases where the distinction will be difficult to make
 
 , most instances will clearly fall within the ambit of either (a)(1) or (a)(2). Subsection (a)(2) also clarifies that "places" which are on "premises" which constitute a "mall[ ], shopping center[ ], or other property open to the public" will be considered (a)(2) places with their corresponding 300-foot buffer zone.
 

 Doe I
 
 , 148 F.Supp.3d at 488-90 (alterations in original) (emphasis added) (footnote omitted).
 

 We must acknowledge that "
 
 ordinarily
 
 , this Court is not bound by the [rulings] of the United States Circuit Courts" nor the rulings of other federal courts.
 
 Haynes v. State
 
 ,
 
 16 N.C.App. 407
 
 , 410,
 
 192 S.E.2d 95
 
 , 97 (1972) (Mallard, C.J., concurring);
 
 see also
 

 Hyman v. Efficiency, Inc.
 
 ,
 
 167 N.C.App. 134
 
 , 137,
 
 605 S.E.2d 254
 
 , 257 (2004) ("We are not bound by decisions of the Federal circuit courts
 
 other than those of the United States Court of Appeals for the Fourth Circuit arising from North Carolina law
 
 ." (emphasis added) (citing
 
 Haynes
 
 ,
 
 16 N.C.App. at 409-10
 
 ,
 
 192 S.E.2d at
 
 97 )). However, in this instance, where the North Carolina federal courts-district and appellate-have spoken directly on the issue at hand (determining a North Carolina statute unconstitutional), and our own State legislature has acknowledged the effect of the federal court rulings on this statute,
 
 see supra
 
 note 3, we will herein adopt the Fourth Circuit ruling and be guided by the analysis of the lower federal courts on this important issue.
 
 See
 

 Shepard v. Ocwen Fed. Bank, FSB
 
 ,
 
 172 N.C.App. 475
 
 , 479,
 
 617 S.E.2d 61
 
 , 64 (2005) ("Although we are not bound by federal case law, we may find their analysis and holdings persuasive.").
 

 In the instant case, the evidence at trial tended to show that Eagle Knob daycare is located in a strip mall of various businesses. Next door to the daycare, on the right, is a hair salon, and next to the hair salon is a tax preparation business. All three businesses share a single building as well as a common parking lot. There is also a restaurant in a separate, freestanding building that shares the same parking lot. While parents use the parking lot to drop off and pick up their children, none of the parking spaces in the lot are specifically reserved or marked as intended for the daycare. The daycare, including the playground area to the side of the building, is surrounded by a chain-link fence, with some privacy screening attached.
 

 *775
 
 On Sunday, 28 December 2014, two officers were on patrol around lunchtime when they drove by Eagle Knob, which was closed at the time. As they drove by, they saw a green SUV slow almost to a stop in the parking lot about seventy-five feet from the daycare and let out a female passenger. The SUV then proceeded through the parking lot past the daycare and exited the parking lot. One of the officers recognized defendant as the driver of the SUV based on a distinctive tattoo on the right side of his neck and the blond highlights in his hair. The officers did not immediately arrest defendant, but rather conducted research first to determine whether defendant was allowed to be where he was within the vicinity of the daycare, and subsequently took out a warrant and arrested him.
 

 *196
 
 Though this is arguably one of those "marginal cases where the distinction [is] difficult to make,"
 
 see
 

 Doe I
 
 , 148 F.Supp.3d at 490, based on this evidence, we believe defendant "[was]
 
 properly
 
 within 300 feet of an (a)(1) location (which is permitted [as there is no buffer zone] ) when in fact he ... [was also] impermissibly within an (a)(2) 300-foot buffer zone,"
 
 see
 

 id.
 
 at 489-90 (emphasis added), when he stopped his car in the parking lot shared by the daycare and other businesses, about seventy-five feet away from the daycare, and allowed a female passenger to exit his vehicle. In other words, the evidence at trial was insufficient to prove that defendant was in violation of
 
 subsection (a)(1)
 
 of
 
 N.C. Gen. Stat. § 14-208.18
 
 , which states that a defendant must knowingly be "
 
 [o]n the premises
 
 of any place intended primarily for the use, care, or supervision of minors...."
 

 Id.
 

 § 14-208.18(a)(1). Instead, the evidence shows only that-before the subsection was deemed unconstitutionally overbroad,
 
 see
 

 Doe II
 
 ,
 
 2016 WL 1629282
 
 , at *12 -defendant would have been in violation of subsection (a)(2) of
 
 N.C. Gen. Stat. § 14-208
 
 , which "applie[d] where the premises in question is
 
 not
 
 intended primarily for the use, care, or supervision of minors, but a portion of that premises (the "place") is intended primarily for the use, care, or supervision of minors[.]"
 
 Doe I
 
 , 148 F.Supp.3d at 489 (emphasis added). As noted in
 
 Doe I
 
 , "(a)(1) applies where the place and premises in question are both primarily intended for the use, care, or supervision of minors" and serves to restrict sex offenders from the
 
 entire
 
 premises.
 
 See id.
 
 In this case, the shared parking lot is located on premises that are not intended primarily for the use, care, or supervision of minors. Therefore, we conclude that a parking lot shared with other businesses (especially with no designation(s) that certain spaces "belong" to a particular business) cannot constitute "premises" as set forth in subsection (a)(1) of the statute.
 

 *776
 
 Accordingly, where the evidence was insufficient to prove that defendant's presence as a sex offender in the parking lot shared by the daycare and other businesses was a location governed by N.C.G.S. § 14-208(a)(1), the trial court erred by denying defendant's motion to dismiss, and we reverse the judgment of the trial court as to his conviction in 14 CRS 50721.
 

 II. Petition for Writ of Certiorari
 

 The remaining issues in defendant's brief and petition of writ of certiorari address the validity and enforceability of defendant's plea agreement. We first review defendant's petition for writ of certiorari.
 

 The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court ruling on a motion for appropriate relief.
 

 N.C. R. App. P. 21(a)(1) (2017). However, "Appellate Rule 21 does not address guilty pleas.... It does not provide a procedural avenue for a party to seek appellate review by certiorari of an issue pertaining to the entry of a guilty plea."
 
 State v. Biddix
 
 , --- N.C.App. ----, ----,
 
 780 S.E.2d 863
 
 , 870 (2015).
 

 Under Appellate Rule 2, our appellate courts have the discretion to suspend the Rules of Appellate Procedure to prevent manifest injustice to a party. N.C. R. App. P. 2 ;
 
 Biddix
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 868
 
 . Furthermore, this court may invoke Rule 2 "either 'upon application of a party' or upon its own initiative.' "
 
 Biddix
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 868
 
 (quoting
 
 Bailey v. North Carolina
 
 ,
 
 353 N.C. 142
 
 , 157,
 
 540 S.E.2d 313
 
 , 323 (2000) ). "This Court has previously recognized the Court may implement Appellate Rule 2 to suspend Rule 21 and grant certiorari, where the three grounds listed in Appellate Rule 21 to issue the writ do not apply."
 

 Id.
 

 ;
 
 see also
 

 State v. Campbell
 
 ,
 
 369 N.C. 599
 
 , ----,
 
 799 S.E.2d 600
 
 (2017) (reversing and remanding because this Court failed to conduct "an
 
 independent determination
 
 of whether the
 
 specific circumstances
 
 of defendant's case warranted invocation of Rule 2" (emphasis added)) ("In simple terms, precedent cannot create an automatic right to review via Rule 2. Instead,
 
 *197
 
 whether an appellant has demonstrated that his matter is the rare
 
 *777
 
 case meriting suspension of our appellate rules is always a discretionary determination to be made on a case by case basis." (citations omitted)).
 

 In the instant case, "an independent determination of ... the specific circumstances of defendant's case" reveals that this case is one of the rare " 'instances' appropriate for Rule 2 review" in that defendant's "substantial rights are ... affected."
 
 See
 

 id.
 

 at ----,
 
 799 S.E.2d 600
 
 (quoting
 
 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 316,
 
 644 S.E.2d 201
 
 , 205 (2007) ). Here, a federal district court and a federal appeals court have both determined that subsection (a)(2) of N.C.G.S. § 14-208.18, under which defendant pled guilty, is unconstitutionally overbroad in violation of the First Amendment.
 
 See
 

 Doe III
 
 , 842 F.3d at 838 ;
 
 Doe II
 
 ,
 
 2016 WL 1629282
 
 , at *12. The State has not sought further appellate review of these decisions and, in this case, has offered no argument contrary to these decisions. As a result of defendant's guilty plea for,
 
 inter alia
 
 , violating subsection (a)(2) of N.C.G.S. § 14-208.18, defendant was sentenced to 84 to 113 months imprisonment. Because that sentence was imposed, in part, for defendant's violation of a statute which has been held unconstitutionally overbroad, in order to "prevent manifest injustice to a party," N.C. R. App. P. 2, we recognize "the discretion inherent in the 'residual power of our appellate courts[,]' "
 
 Campbell
 
 , 369 N.C. at ----,
 
 799 S.E.2d 600
 
 (quoting
 
 Steingress v. Steingress
 
 ,
 
 350 N.C. 64
 
 , 66,
 
 511 S.E.2d 298
 
 , 299-300 (1999) ), and hereby invoke Rule 2 to suspend the requirements of Rule 21 and issue the writ of certiorari to reach the merits of defendant's remaining arguments.
 

 As a further threshold matter, we also address the State's "Motion to Strike Issues II-VI Raised in Defendant's Brief," filed 16 November 2016, and subsequent "Motion to File Substitute Brief and Substitute Response to Petition for Writ of Certiorari," filed 6 March 2017. In the State's substitute brief, the State acknowledges the Fourth Circuit's opinion in
 
 Doe III
 
 , which affirmed the judgment of the lower court, holding
 
 N.C. Gen. Stat. § 14-208.18
 
 (a)(2) "unconstitutionally overbroad in violation of the First Amendment."
 
 Doe II
 
 ,
 
 2016 WL 1629282
 
 , at *12,
 
 aff'd by
 

 Doe III
 
 , 842 F.3d at 838, 847-48. Accordingly, we deny the State's Motion to Strike Issues II-VI, and grant the State's Motion to File Substitute Brief and Substitute Response to Petition for Writ of Certiorari.
 

 _________________________
 

 Having granted defendant's petition for writ of certiorari, we now review the following issues raised by defendant: (III) whether defendant's conviction following his guilty plea to unlawfully being within
 
 *778
 
 300 feet of a daycare can be vacated due to a federal court ruling the statute ( N.C.G.S. § 14-208.18(a)(2) ) unconstitutional,
 
 see
 

 Doe III
 
 , 842 F.3d at 838, 847-48 ;
 
 Doe II
 
 ,
 
 2016 WL 1629282
 
 , at *12 ; (IV) whether the indictment in 14 CRS 50703 was insufficient; (V) whether the factual basis for defendant's plea in 14 CRS 50703 was insufficient; (VI) whether the court erred in allowing the State to amend the indictment in 15 CRS 50072 for unlawful failure to report a new address within three business days; and (VII) whether judgment on all of defendant's guilty pleas is to be vacated should any one conviction be reversed.
 

 III-VI
 

 Defendant contends his conviction following his guilty plea to unlawfully being within 300 feet of a daycare must be vacated due to the Fourth Circuit's opinion ruling
 
 N.C. Gen. Stat. § 14-208.18
 
 (a)(2) unconstitutional.
 
 See
 

 Doe III
 
 , 842 F.3d at 838, 847-48. We agree and thus vacate defendant's subsection (a)(2) conviction in file no. 14 CRS 50703.
 

 In
 
 Doe II
 
 , the federal district court concluded as follows:
 

 Subsection (a)(2) punishes a wide range of First Amendment activity for a significant number of individuals compared to the statute's plainly legitimate sweep.... [T]he plainly legitimate sweep consists of subsection (a)(2)'s application to minor-victim
 
 *198
 
 offenders....
 
 [
 

 5
 

 ]
 
 Subsection (a)(2) greatly interferes with restricted sex offenders' ability to be present at public parks, libraries, movie theaters, and houses of worship, among other places associated with significant First Amendment activity. Furthermore, restricted sex offenders may be unable to enter some governmental buildings at all ... because they lie inside (a)(2) buffer zones.
 

 ....
 

 *779
 
 Here ... restricted sex offenders are prohibited from even being present at a wide variety of places closely associated with First Amendment activities. Hence, while the law is not specifically addressed to speech, its reach is so vast as to encompass a wide range of First Amendment activity.... Mem. Op. & Order [Doc. # 71], at 15-16 ("[R]estricted sex offenders may have very legitimate reasons for being on properties that include smaller portions dedicated to minors. Such reasons might include shopping, eating, exercising, attending religious services, or any of the other myriad activities in which humans engage."). Therefore, holding subsection (a)(2) to be overbroad in this instance, even though the law is not specifically targeted at speech, is still appropriate.
 

 For the foregoing reasons, the Court holds that
 
 N.C. Gen. Stat. § 14-208.18
 
 (a)(2) is unconstitutionally overbroad in violation of the First Amendment.
 

 2016 WL 1629282
 
 , at *11-12 (internal citations omitted). In affirming the federal district court opinion, the Fourth Circuit noted as follows:
 

 Subsection (a)(2) burdens the First Amendment rights of all restricted sex offenders "by inhibiting the[ir] ability ... to go to a wide variety of places associated with First Amendment activity." For example, subsection (a)(2) potentially impedes the ability of restricted sex offenders to access public streets, parks, and other public facilities.
 

 ....
 

 While all parties agree North Carolina has a substantial interest in protecting minors from sexual crimes, it was incumbent upon the State to prove subsection (a)(2) was appropriately tailored to further that interest.
 

 Doe III
 
 , 842 F.3d at 845, 847 (alteration in original) (citations omitted).
 

 In the instant case, defendant was indicted and pled guilty in 14 CRS 50703 to violating N.C.G.S. § 14-208.18(a)(2), which prohibits certain persons from being within 300 feet a location intended primarily for the use, care, or supervision of minors, when such places are located in malls, shopping centers, and other properties open to the general public. Accordingly, where defendant was indicted and convicted based on a statute deemed to be "unconstitutionally overbroad in violation of the
 
 *780
 
 First Amendment,"
 
 Doe II
 
 ,
 
 2016 WL 1629282
 
 , at *12,
 
 aff'd by
 

 Doe III
 
 , 842 F.3d at 838, 847-48, while his direct appeal was pending, and where the State offers no contrary argument, we adopt the Fourth Circuit's analysis and ruling, and we vacate defendant's conviction for violating N.C.G.S. § 14-208.18 (a)(2). As a result, we need not address defendant's remaining arguments IV-VI regarding the sufficiency of the indictment and the factual basis for his plea in 14 CRS 50703 and the challenge to the amendment of the indictment in 15 CRS 50072.
 

 VII
 

 Defendant argues that judgment on all of his guilty pleas should be vacated should any one conviction be reversed. Specifically, defendant contends that because the plea agreement between defendant and the State expressly contemplated a complete disposition of all pending substantive charges
 
 *199
 
 against defendant, should any of those convictions be vacated or reversed, then "essential and fundamental terms of the plea agreement" will become "unfulfillable." We agree.
 

 If "essential and fundamental terms of the plea agreement [are] unfulfillable," then "[t]he entire plea agreement must be set aside[.]"
 
 State v. Rico
 
 ,
 
 218 N.C.App. 109
 
 , 122,
 
 720 S.E.2d 801
 
 , 809 (Steelman, J., dissenting),
 
 rev'd for reasons stated in the dissenting opinion
 
 ,
 
 366 N.C. 327
 
 ,
 
 734 S.E.2d 571
 
 (2012) (per curiam);
 
 see
 

 State v. Myers
 
 ,
 
 238 N.C.App. 133
 
 , 139-40,
 
 766 S.E.2d 690
 
 , 694 (2014) (citing
 
 Rico
 
 ,
 
 218 N.C.App. at 109, 110
 
 ,
 
 720 S.E.2d at 801
 
 , 802 ) (setting aside the defendant's plea agreement where the defendant successfully challenged the factual bases for aggravating factors as set out in his plea agreement).
 

 In the instant case, defendant pled guilty based on a negotiated plea arrangement to being a sex offender unlawfully within 300 feet of a daycare (14 CRS 50703,
 
 see
 
 Section III-VI,
 
 supra
 
 ), failure to report a new address pursuant to N.C.G.S. § 14-208.11 (15 CRS 50072), and three counts of attaining habitual felon status (15 CRS 250-52), after the jury convicted him of being a sex offender on the premises of a daycare (14 CRS 50721).
 

 Having determined that defendant's guilty plea with regard to violating N.C.G.S. § 14-208.18(a)(2) (14 CRS 50703) must be vacated, it is apparent that the "essential and fundamental terms of the plea agreement" have become "unfulfillable."
 
 See
 

 Rico
 
 ,
 
 218 N.C.App. at 122
 
 ,
 
 720 S.E.2d at 809
 
 (Steelman, J., dissenting). Accordingly, the entire plea agreement must be set aside.
 

 *781
 
 The conviction in 14 CRS 50721 is reversed, and the conviction in 14 CRS 50703 is vacated. The remaining convictions entered pursuant to the plea agreement-failure to report a new address (15 CRS 50072), and three counts of obtaining habitual felon status (15 CRS 250-52) are set aside and remanded to the trial court for further proceedings.
 

 VACATED IN PART; REVERSED IN PART; AND REMANDED.
 

 Judges STROUD and INMAN concur.
 

 [1]
 

 For ease of reading and to distinguish the primary offenses, we hereinafter refer to 14 CRS 50703 as "being a sex offender within 300 feet of a daycare" and 14 CRS 50721 as "being a sex offender on the premises of a daycare." We use the term "daycare" as the only location or premises "intended primarily for the use, care, or supervision of minors" in the instant case is, in fact, a child daycare center.
 

 [2]
 

 The indictments in file nos. 14 CRS 50703 and 50721 each described the indicted offense as "in violation of 14-208.18[ (a) ]," but neither indictment listed under which
 
 subsection
 
 -(1), (2), or (3)-of G.S. § 14-208.18(a) defendant was specifically indicted. However, because the indictment in file no. 14 CRS 50721 tracks the language of subsection (1) and the indictment in file no. 14 CRS 50703 tracks the language of subsection (2), it can be presumed that the indictments were related to those respective subsections.
 

 [3]
 

 The current (2016) version of N.C.G.S. § 14-208.18 amended subsection (3) and added a subsection (4) to read as follows:
 

 (3) At any place where minors frequently congregate, including, but not limited to, libraries, arcades, amusement parks, recreation parks, and swimming pools, when minors are present.
 

 (4) On the State Fairgrounds during the period of time each year that the State Fair is conducted, on the Western North Carolina Agricultural Center grounds during the period of time each year that the North Carolina Mountain State Fair is conducted, and on any other fairgrounds during the period of time that an agricultural fair is being conducted.
 

 N.C.G.S. § 14-208.18(a)(3)-(4) (2016).
 

 The Session Laws provided that the 2016 amendments would be repealed and the original 2011 statute would go back into effect if the orders of the United States District Court for the Middle District of North Carolina finding subsections (a)(2) and (a)(3) unconstitutional were stayed or overturned by a higher court on appeal). N.C. Sess. Laws 2016-102, § 2, eff. Sept. 1, 2016;
 
 see
 

 Does v. Cooper
 
 ,
 
 148 F.Supp.3d 477
 
 , 496-97 (M.D.N.C. 2015) (hereinafter
 
 Doe I
 
 ) (holding N.C.G.S. § 14-208.18(a)(3) unconstitutionally vague and permanently enjoining its enforcement);
 
 Does v. Cooper
 
 , 1:13CV711,
 
 2016 WL 1629282
 
 , at **12-13 (M.D.N.C. Apr. 22, 2016) (hereinafter
 
 Doe II
 
 ) (holding N.C.G.S. § 14-208.18(a)(2) unconstitutionally overbroad in violation of the First Amendment and enjoining defendants from enforcing N.C.G.S. § 14-208.18(a)(2) against the plaintiffs "and all other persons similarly situated").
 

 On 30 November 2016, the United States Court of Appeals for the Fourth Circuit decided
 
 Doe v. Cooper
 
 ,
 
 842 F.3d 833
 
 (4th Cir. 2016) (hereinafter
 
 Doe III
 
 ), affirming the judgment of the district court, which "permanently enjoined enforcement of section 14-208.18(a)(2) and section 14-208.18(a)(3)."
 

 Id.
 

 at 838 ;
 
 see infra
 
 Section III-VI (discussing the application of the Fourth Circuit's decision in
 
 Doe III
 
 to defendant Anderson's conviction under section 14-208.18(a)(2) ).
 

 [4]
 

 Doe I
 
 determined that subsection (a)(2) was not unconstitutionally vague but left open for determination at trial whether (a)(2) was unconstitutionally overbroad.
 
 See
 

 id.
 
 at 481, 492, 505 ("[S]ubsections (a)(1) and (a)(2) provide sufficient notice to those subject to the law regarding where they are prohibited to go. The existence of a few marginal cases where the precise reach of the law is unclear does not make subsections (a)(1) and (a)(2) vague.");
 
 see also
 

 Doe III
 
 ,
 
 842 F.3d at
 
 842 n.4 ("The State's appeal of the district court's final judgment came after briefing on its earlier interlocutory appeal regarding subsection (a)(3) was completed. The State's two appeals were consolidated for purposes of this proceeding, with the issue of subsection (a)(2)'s overbreadth addressed through supplemental briefing."). However, the memorandum opinion and order issued about four months later,
 
 Doe II
 
 , held that subsection (a)(2) is unconstitutionally overbroad in violation of the First Amendment, leaving subsection (a)(1) (the only remaining subsection), intact.
 
 2016 WL 1629282
 
 , at *12. Thus, even though subsection (a)(2) has been determined to be unconstitutionally overbroad, the analysis and comparison as laid out in
 
 Doe I
 
 between subsections (a)(1) and (a)(2) is highly illustrative in terms of defendant's argument on appeal of his conviction for violating subsection (a)(1).
 

 [5]
 

 Regarding the statute's "plainly legitimate sweep," the court in
 
 Doe II
 
 began its analysis as follows:
 

 The fact that subsection (a)(2) is not narrowly tailored with respect to adult-victim offenders, however, does not end the analysis. Before the Court can hold subsection (a)(2) to be unconstitutionally overbroad, it must determine if subsection (a)(2) punishes a substantial amount of protected free speech, judged in relation to the statute's
 
 plainly legitimate sweep
 
 . For the reasons discussed below, the Court concludes that subsection (a)(2) is unconstitutionally overbroad.
 

 2016 WL 1629282
 
 , at *11 (emphasis added) (citation omitted).