IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-217

No. COA20-291

Filed 18 May 2021

Cabarrus County, Nos. 18 CRS 144, 18 CRS 50264

STATE OF NORTH CAROLINA

v.

ANTWAN BERNARD PARKER, Defendant.

Appeal by Defendant from judgment entered 8 October 2019 by Judge Anna M. Wagoner in Cabarrus County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General James M. Wilson, for the State.*

*Sharon L. Smith for the Defendant.*

JACKSON, Judge.

The issues in this case are (1) whether the trial court properly denied Defendant Antwan Bernard Parker's ("Defendant") motion to suppress after determining that the search of his vehicle was supported by probable cause; and (2) whether the trial court properly instructed the jury regarding the nature of two controlled substances that Defendant was found to possess. Because we conclude that the trial court committed no error, we affirm the denial of the motion to suppress

and discern no error in the judgment entered upon Defendant's convictions.

## I.    Factual and Procedural Background

On 15 January 2018, Officer Tony Peeler of the Kannapolis Police Department was running a seatbelt initiative on South Main Street when he noticed that the driver of a southbound Lincoln Town Car was not wearing a seatbelt. Upon pulling over the car, he observed Defendant in the driver's seat and passenger Billy Ray Neal in the front passenger seat. Officer Peeler asked for Defendant's license and registration, and while speaking with Defendant he began to notice the odor of burnt marijuana emanating from the vehicle. He also saw a large amount of cash scattered across Defendant's lap.

Based on the smell of marijuana, Officer Peeler returned to his patrol car to request backup to search the vehicle. Once two other officers had arrived, Officer Peeler re-approached the vehicle and told Defendant and Mr. Neal that he could smell the odor of marijuana coming from their car. Officer Peeler advised them that if they handed over everything they had, he would simply issue a citation for the possession of marijuana and Defendant and Mr. Neal would be released. In response, Mr. Neal admitted that he had "smoked a marijuana joint earlier" and pulled an object out of his sock, which Officer Peeler recognized to be a partially smoked marijuana cigarette.

Officer Peeler then asked Defendant and Mr. Neal to step out of the vehicle so

he could perform a search, and they complied. The officers observed that Defendant appeared to be "fidgety" and "nervous" during the search. In the vehicle's center console, Officer Peeler found two black digital scales and a small round pill in a plastic bag. In a compartment on the driver's side door, Officer Peeler found an open pack of cigarillos containing a plastic bag with a green leafy substance that he believed to be marijuana. In a cup holder, Officer Peeler found a cloth containing two gray, rock-like substances that he believed to be narcotics. Officer Peeler subsequently placed Defendant under arrest. When asked about the substances, Defendant stated that he did now know what any of it was. Defendant was subsequently charged with two counts of felony possession of a Schedule I Controlled Substance.

¶ 5       Prior to trial, Defendant filed a motion to suppress the evidence gathered from the search of his vehicle, wherein he argued that Officer Peeler lacked probable cause to search the vehicle based solely on the smell of marijuana—arguing that the odor of burnt marijuana is indistinguishable from the odor of legal burnt hemp. A hearing was held on the motion to suppress on 25 September 2019 in Cabarrus County Superior Court.

¶ 6       At the suppression hearing, Defendant submitted to the court a memo published by the North Carolina State Bureau of Investigation ("SBI") discussing the similarities between marijuana and legal hemp. When cross-examined about the memo, Officer Peeler testified that he was aware that hemp had been recently

legalized in North Carolina, but that he had not received any training on identifying hemp. Officer Peeler testified that he was not aware that the odor of burnt hemp was similar to the odor of burnt marijuana.

¶ 7        However, Officer Peeler also testified that based on his fourteen years of law enforcement experience—during which he had made approximately 50-60 marijuana-related arrests—he believed the odor which he smelled (and the substance handed to him by Mr. Neal) to be marijuana. The trial court ultimately denied Defendant's motion to suppress, determining that Officer Peeler "had reasonable suspicion . . . to find that it was the odor of burned marijuana" based on his training and experience and based on Mr. Neal's admission that he had just smoked marijuana.

¶ 8        Following the suppression hearing, the Honorable Anna M. Wagoner presided over a one-day jury trial held on 7 October 2019 in Cabarrus County Superior Court. During trial, Adam Lewis of the SBI testified for the State as an expert in the forensic chemistry of controlled substances. Mr. Lewis identified the gray rock-like substance as 4.49 grams of Cyclopropylfentanyl—a fentanyl derivative compound. He stated that Cyclopropylfentanyl is a Schedule I controlled substance under Chapter 90 of the North Carolina General Statutes. Mr. Lewis identified the pill as N-ethylpentylone—a chemical compound similar to "bath salts," which is also included as a Schedule I controlled substance under Chapter 90.

¶ 9        During the charge conference, Defendant submitted written requests for two

special jury instructions. The requested instructions read, in pertinent part, as follows:

> **Special Jury Instruction on Knowing Possession of Cyclopropyl Fentanyl**
>
> . . . For you to find the defendant guilty of this offense, the State must prove beyond a reasonable doubt that the defendant knowingly possessed Cyclopropyl Fentanyl and that the defendant knew that what he possessed was Cyclopropyl Fentanyl. Cyclopropyl Fentanyl may be, but you are not required to find that it is, a controlled substance.
>
> **Special Jury Instruction on Knowing Possession of N-Ethylpentylone**
>
> . . . For you to find the defendant guilty of this offense, the State must prove beyond a reasonable doubt that the defendant knowingly possessed N-Ethylpentylone and that the defendant knew that what he possessed was N-Ethylpentylone. N-Ethylpentylone may be, but you are not required to find that it is, a controlled substance.

¶ 10    The trial court declined to give either of Defendant's requested jury instructions, instead instructing the jury, in pertinent part, that**:**

> The defendant has been charged with possessing cyclopropylfentanyl, a controlled substance. For you to find the defendant guilty of this offense, the State must prove, beyond a reasonable doubt, that the defendant knowingly possessed cyclopropylfentanyl and cyclopropylfentanyl is a controlled substance.
>
> . . .

> With regard to count two, the defendant has been charged with possessing N-ethylpentylone, a controlled substance. For you to find the defendant guilty of this offense, the State must prove, beyond a reasonable doubt, that the defendant knowingly possessed N-ethylpentylone. N-ethylpentylone is a controlled substance.

The jury ultimately found Defendant guilty of both counts of felony possession of a controlled substance, and Defendant also pleaded guilty to attaining habitual felon status. He was sentenced to a consolidated active sentence of 43 to 64 months. Defendant gave notice of appeal in open court on 8 October 2019.

## II. Analysis

Defendant raises two primary arguments on appeal, asserting that the trial court erred by: (1) denying his motion to suppress the evidence gathered from the search of his car; and (2) denying his requested jury instructions regarding the substances found in his car. Because we believe that the trial court committed no error, we affirm the denial of the motion to suppress and discern no error in the judgment entered upon Defendant's convictions.

### A. Denial of the Motion to Suppress

Defendant first challenges the trial court's denial of his motion to suppress evidence, arguing that the trial court erred by: (1) failing to memorialize its ruling in a written order; (2) failing to address the material issue of the indistinguishable scents of marijuana and legal hemp; (3) relying on Mr. Neal's statements to support its finding of probable cause; and (4) failing to show that probable cause existed

particularized to Defendant, as opposed to Mr. Neal. In response, the State argues

that Defendant has not adequately preserved the denial of the motion to suppress for

our review, and that in any event the trial court's order contained no error because

Officer Peeler possessed probable cause to search the vehicle. We affirm the trial

court's order.

### 1. *Preservation*

¶ 14      The first issue before us is whether Defendant has adequately preserved for

appellate review the issues raised in his motion to suppress—i.e., the admissibility of

the evidence gathered during Officer Peeler's search of the vehicle. Defendant

contends that because he raised an admissibility objection prior to Officer Peeler's

testimony, this issue has been preserved, and we should review to determine whether

the denial of the objection was reversible error. The State contends that because

Defendant failed to renew his admissibility objection during Officer Peeler's trial

testimony, plain error review should apply.

¶ 15      "To preserve an issue for appeal, the defendant must make an objection at the

point during the trial when the State attempts to introduce the evidence. A defendant

cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His

objection must be renewed at trial." *State v. Golphin*, 352 N.C. 364, 463, 533 S.E.2d

168, 232 (2000) (internal marks and citations omitted).

¶ 16      Here, defense counsel explained to the trial court prior to trial that she would

have to object when the State introduced at trial evidence regarding the search. The court replied, "For the record that's fine." When Officer Peeler began to testify about the search of Defendant's car, defense counsel stated, "I'm going to object at this point, your Honor." The court replied, "Overruled at this point, for the record." We hold that Defendant's objection was properly preserved and that harmless error review should be applied. *See State v. Russell*, 92 N.C. App. 639, 644-45, 376 S.E.2d 458, 461-62 (1989) (conducting a harmless error review of the denial of a defendant's motion to suppress).

### 2. *Merits of the Trial Court's Denial of the Motion to Suppress*

¶ 17    We next address whether the trial court's failure to issue a written order memorializing its denial of the motion to suppress was error, and whether the trial court correctly determined that the search of Defendant's vehicle was supported by probable cause. We hold that no written order was required and that the trial court's probable cause analysis was correct.

#### a. *Failure to Issue a Written Order*

¶ 18    Defendant argues that the trial court committed reversible error by denying his motion to suppress without a written order explaining its findings of fact and conclusions of law. Defendant is correct that when ruling on a motion to suppress, typically "[t]he judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2019). However, under this statute, our

Supreme Court has held that "[a] written determination setting forth the findings and conclusions is not necessary, but it is the better practice." *State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015). Express findings of facts are required "only when there is a material conflict in the evidence," and the trial court is permitted to make its findings "either orally or in writing." *Id.* In other words, "[i]f the trial court provides the rationale for its ruling from the bench and there are no material conflicts in the evidence, the court is not required to enter a written order." *State v. Wainwright*, 240 N.C. App. 77, 83, 770 S.E.2d 99, 104 (2015).

¶ 19        Here, the trial court issued only an oral ruling denying Defendant's motion to suppress:

> At this point I'm going to deny your motion to suppress. At this point I do obviously agree that [Officer Peeler] had reasonable suspicion and I'm going to find that it was the odor of burned marijuana and with the passenger admitting that he had just smoked some marijuana, that that did give the officer probable cause to search the automobile.

¶ 20        We thus begin our analysis by addressing whether there was a material conflict in the evidence before the trial court. We have previously held that "for purposes of section 15A-977(f), a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected." *State v. Baker*, 208 N.C. App. 376, 384, 702 S.E.2d 825, 831 (2010).

For example, in *Baker* we held that a material conflict existed because "both the State and defendant presented evidence at the suppression hearing," and because the defendant and the arresting officer gave conflicting testimony regarding key factual issues (such as the defendant's location on the roadway when he was pulled over, the number of officers present during the arrest, and at what point the officers activated their lights and sirens). *Id*. at 384-87, 702 S.E.2d at 831-33. In contrast, in *State v. Jacobs*, 174 N.C. App. 1, 620 S.E.2d 204 (2005), *rev'd and vacated in part on other grounds*, 361 N.C. 565, 648 S.E.2d 841 (2007), we held that no material conflict existed because the only evidence presented during the suppression hearing consisted of the undisputed testimony of law enforcement officers, and the defendant offered no evidence of his own (though he did briefly cross-examine the officers). *Id.* at 8-10, 620 S.E.2d at 209-10.

Here, at the suppression hearing the only factual evidence presented was the testimony of Officer Peeler, who described his interactions with Defendant on the day of the traffic stop. Defendant appears to argue that a material conflict existed because of the SBI memo that he introduced at the hearing (which discussed the similarities between legal hemp and marijuana), asserting that this memo introduced a conflict regarding whether the odor of marijuana was sufficient to support probable cause.

We disagree. Although the memo did perhaps call into question the State's

legal theory regarding whether Officer Peeler's perception of the scent of marijuana provided probable cause to search the vehicle, this conflict was not a material issue of *fact*. Thus, because (1) Defendant introduced no evidence creating a material conflict in the evidence supporting the probable cause determination; and (2) the trial court issued a ruling from the bench to explain its rationale, we hold that the trial court was not required to enter a written order when denying Defendant's motion to suppress.

### b. *Probable Cause*

We turn next to whether the trial court's order correctly determined that the search of Defendant's vehicle was supported by probable cause. When reviewing a trial court's ruling on a motion to suppress, we review the trial court's findings of fact to determine whether they "are supported by competent evidence" and then review "whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Johnston*, 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994) (internal marks and citations omitted). "An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence." *Id*.

"The Fourth Amendment of the United States Constitution and Article 1, Section 20 of the North Carolina Constitution prohibit unreasonable searches and

seizures." *State v. Downing*, 169 N.C. App. 790, 794, 613 S.E.2d 35, 38 (2005).

Typically, a warrant is required to conduct a search unless a specific exception

applies. *State v. Cline*, 205 N.C. App. 676, 679, 696 S.E.2d 554, 556 (2010). For

example, the motor vehicle exception provides that the "search of a vehicle on a public

roadway or public vehicular area is properly conducted without a warrant as long as

probable cause exists for the search." *State v. Earhart*, 134 N.C. App. 130, 133, 516

S.E.2d 883, 886 (1999). Probable cause is generally defined as "a reasonable ground

of suspicion, supported by circumstances sufficiently strong in themselves to warrant

a cautious man in believing the accused to be guilty" of an unlawful act. *State v.

Yates*, 162 N.C. App. 118, 122, 589 S.E.2d 902, 904 (2004) (internal marks and citation

omitted). In the context of the motor vehicle exception,

> [a] police officer in the exercise of his duties may search an
> automobile without a search warrant when the existing
> facts and circumstances are sufficient to support a
> reasonable belief that the automobile carries contraband
> materials. If probable cause justifies the search of a
> lawfully stopped vehicle, it justifies the search of every part
> of the vehicle and its contents that may conceal the object
> of the search.

*State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018) (internal

marks and citations omitted).

¶ 26        Defendant first argues that the search of his vehicle was unsupported by

probable cause because Officer Peeler's impression of the scent of marijuana was

insufficient to support a reasonable belief that the car contained contraband—given that the odor of burnt hemp and marijuana are indistinguishable. In support of this argument, Defendant relies on the SBI memo which he submitted during the suppression hearing.

As explained in the SBI memo, in 2015 North Carolina enacted the Industrial Hemp Act, which legalized the cultivation, processing, and sale of industrial hemp within the state, subject to the oversight of the North Carolina Industrial Hemp Commission. *See* S.L. 2015-299; N.C. Gen. Stat. § 106-568.50 (2019), *et seq*. Industrial hemp is a variety of the species Cannabis Sativa—the same species of plant as marijuana. The difference between the two substances is that industrial hemp contains very low levels of tetrahydrocannabinol ("THC"), which is the psychoactive ingredient in marijuana. *See* N.C. Gen. Stat. § 106-568.51(7) (2019) (defining industrial hemp as any variety of the cannabis plant which contains less than 0.3% THC).

According to the SBI memo, the legalization of hemp poses some novel issues for law enforcement, as "[t]here is no easy way for law enforcement to distinguish between industrial hemp and marijuana" and "[t]here is currently no field test which

distinguishes" between the two substances.[1]  The memo further explains as follows:

> Hemp and marijuana look the same and have the same odor, both unburned and burned.  This makes it impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant.
>
> . . .
>
> [W]hen a law enforcement officer encounters plant material that looks and smells like marijuana, he/she will no longer have probable cause to seize and analyze the item because the probable cause to believe it is evidence of a crime will no longer exist since the item could be legal hemp.  Police narcotics K9's cannot tell the difference between hemp and marijuana because the K9's are trained to detect THC which is present in both plants.  Law enforcement officers cannot distinguish between paraphernalia used to smoke marijuana and paraphernalia used to smoke hemp for the same reasons.
>
> The inability for law enforcement to distinguish the difference between hemp and marijuana is problematic in all marijuana prosecutions[.]  There is at least once District Attorney's Office in NC which is currently not prosecuting marijuana cases due to the inability of law enforcement to distinguish the difference between hemp and marijuana.

¶ 29      The legal issues raised by the recent legalization of hemp have yet to be

---

[1] The memo was published by the SBI in 2019 in response to then-pending Senate Bill 315—legislation which sought to clarify whether the possession of hemp is also legal within the state.  S.B. 315 was eventually signed by the Governor and enacted on 12 June 2020, though the final version of the law did not clarify the legality of hemp possession.  The memo is available for viewing at *Industrial Hemp/CBD Issues*, State Bureau of Investigations, https://www.sog.unc.edu/sites/www.sog.unc.edu/files/doc_warehouse/NC%20SBI%20-%20Issues%20with%20Hemp%20and%20CBD%20Full.pdf.

analyzed by the appellate courts of this state. As the State correctly notes, prior to the legalization of hemp, our courts have typically held that the odor of marijuana standing alone is sufficient to support probable cause to search a vehicle. *See, e.g., State v. Mitchell*, 224 N.C. App. 171, 175, 735 S.E.2d 438, 442 (2012) ("[T]he odor of marijuana alone is sufficient to constitute probable cause."). Our courts have also previously held that police officers are entitled to identify marijuana based on a simple visual inspection. *See, e.g., State v. Fletcher*, 92 N.C. App. 50, 56-57, 373 S.E.2d 681, 685-86 (1988) (holding that a police officer's visual identification of a substance as marijuana provided a sufficient basis for conviction of a marijuana offense).

¶ 30        Defendant's appeal raises the possibility that these holdings may need to be re-examined. If the scent of marijuana no longer conclusively indicates the presence of an illegal drug (given that legal hemp and illegal marijuana apparently smell the same), then the scent of marijuana may be insufficient to show probable cause to perform a search. Likewise, if the sight of marijuana no longer conclusively identifies the presence of an illegal drug (given that legal hemp plants and illegal marijuana plants look identical), then a police officer may not be able to rely on a visual identification of marijuana alone to support probable cause.

¶ 31        However, in the case before us today we need not determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer

probable cause to search a vehicle. That is because in this case Officer Peeler had more than just the scent of marijuana to indicate that illegal drugs might be present in the car. Officer Peeler testified that he first began to develop a suspicion of illegal activity upon noticing the scent of burnt marijuana while speaking with Defendant and Mr. Neal at the traffic stop. Officer Peeler then asked Defendant and Mr. Neal whether there was any marijuana in the vehicle, and Mr. Neal "advised [that] he smoked a marijuana joint earlier" and then "reached into his left sock and pulled out a partially smoked marijuana joint."

¶ 32      Thus, there were three pieces of evidence supporting Officer Peeler's probable cause to search Defendant's vehicle: (1) the scent of what Officer Peeler believed to be burnt marijuana emanating from the vehicle; (2) Mr. Neal's admission that he had just smoked marijuana; and (3) the partially smoked marijuana cigarette which Mr. Neal produced from his sock. We are satisfied that these three factors combined were sufficient to provide probable cause to search the vehicle. As we have previously held, a person's admission of a crime to law enforcement is typically sufficient to support a finding of probable cause:

> People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime . . . carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.

*State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984) (quoting *United*

*States v. Harris*, 403 U.S. 573, 583 (1971)). Under this standard, Mr. Neal's admission to having just smoked marijuana carried its own indicia of credibility, and this admission (combined with the physical evidence that Mr. Neal produced from his sock) led Officer Peeler to reasonably believe that the vehicle would contain contraband materials.[2]

¶ 33    Finally, Officer Peeler's own subjective belief that the substance he smelled was marijuana was additional evidence supporting probable cause—even if his belief might ultimately have been mistaken. As the United States Supreme Court has recognized,

> [t]he Fourth Amendment prohibits unreasonable searches and seizures. Under this standard, a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake. An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment.
>
> . . .

---

[2] Though Defendant raised several potentially meritorious objections to the admission of Mr. Neal's statements at the suppression hearing, Defendant has abandoned these issues by failing to discuss them in his appellate brief. *See* N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the [parties'] several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."); *see also Thompson v. Bass*, 261 N.C. App. 285, 292, 819 S.E.2d 621, 627 (2018) ("[I]t is the appellant's burden to show error occurring at the trial court, and it is not the role of this Court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein.").

> To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection . . . . The limit is that the mistakes must be those of reasonable men.

*Heien v. North Carolina*, 574 U.S. 54, 57-61 (2014) (internal marks and citations omitted).

¶ 34        In his final challenge to the suppression ruling, Defendant contends that the search of his car was unlawful because the evidence failed to establish probable cause particularized to Defendant, as opposed to Mr. Neal. Defendant cites a case from the United States Court of Appeals for the Fourth Circuit in support of his assertion that "the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity," absent particularized evidence of who the marijuana belongs to. *See United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). This argument is unavailing, as this Court is not bound by law from federal circuit courts. *See State v. Anderson*, 254 N.C. App. 765, 774, 804 S.E.2d 189, 195 (2017) ("[O]rdinarily, this Court is not bound by the rulings of the United States Circuit Courts nor the rulings of other federal courts.") (internal marks and citation omitted).

¶ 35        In contrast, under North Carolina law, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Degraphenreed*, 261 N.C. App. at

241, 820 S.E.2d at 336 (2018) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). Accordingly, because here Officer Peeler's observations and Mr. Neal's admission provided probable cause to search Defendant's vehicle, Officer Peeler was legally entitled to search every part of the vehicle for the presence of marijuana. Defendant's arguments are thus overruled, and we affirm the trial court's denial of the motion to suppress.

## B. Jury Instructions

¶ 36 Defendant next claims that the trial court erred by denying his requested special jury instructions regarding the possession of the two allegedly controlled substances—Cyclopropylfentanyl and N-ethylpentylone. He further contends that the instructions that were ultimately provided by the trial court were erroneous in two respects. First, he asserts that the trial court erred by expressly informing the jury that these two drugs were controlled substances—rather than letting the jury decide the matter on their own—as this relieved the State of its burden of proof on a disputed factual issue and invaded the province of the jury as fact-finder. Second, he argues that the trial court committed a similar error by failing to inform the jury that a defendant must be aware of the identity of the substances he possessed in order to be found guilty. We disagree, and find no error in the trial court's jury instructions.

### 1. *Preservation*

¶ 37 The State once again begins by arguing that the jury instructions issue has not

been properly preserved for appellate review, and that plain error review should apply. Defendant disagrees, contending that because he did raise an objection to the jury instructions during a conference with the trial court, we should review this issue to determine whether any error committed by the trial court was harmless beyond a reasonable doubt. We agree with Defendant.

¶ 38    During the charge conference, Defendant presented his two proposed special jury instructions, and explained why these special instructions were more appropriate than the pattern jury instructions. Defendant's written request for the special jury instructions was, in and of itself, sufficient to preserve his challenge for appeal. *See Kinsey v. Spann*, 139 N.C. App. 370, 373, 533 S.E.2d 487, 490 (2000) ("[When] a party submits a written request for instructions during the charge conference, that party need not object to the instructions as read in order to properly preserve his appeal as to those instructions.").

¶ 39    Moreover, defense counsel generally explained her reasoning for the two requested instructions:

> **[Defense Counsel]:** On the pattern [instruction], the recommended change is to add [the footnote text] to the end of the first sentence of the second paragraph. So where it says in the pattern jury instruction, "For you to find the defendant guilty of this offense, the State must prove beyond a reasonable doubt that the defendant knowingly possessed," in this case cyclopropylfentanyl, and then the footnote suggests to add the language there, which I do propose, and "that the defendant knew that what he

possessed was cyclopropylfentanyl." That's the first suggested change.

The second suggested change is somewhat unusual, but in this specific case, neither of these substances are on the schedule. So it's the defense position that the State has to prove that they are controlled substances. So it would be our contention that the language should be "cyclopropylfentanyl may be but the jury is not required to find that it is a controlled substance."

The following exchange then occurred with regard to the second issue—the identity of the controlled substance:

> **[Prosecutor]:** So, the State would object to any type of reference in the jury instruction . . . [to the language] "cyclopropylfentanyl may be but you are not required to find that it is a controlled substance." . . . I mean, that's not for the jury to determine.
>
> **[Trial Court]:** Okay. I think I'm going to deny your request.
>
> **[Defense Counsel]:** And Your Honor, with respect to that, I do believe, based on recent case law, I have to request that instruction. I'm not conceding –
>
> **[Trial Court]:** Okay. I will note your objection to my denial for giving it.

We hold that this exchange demonstrates that the first issue—the jury instructions on the identity of the controlled substance—was properly preserved. Defense counsel explained in detail her reasoning for requesting this special instruction on the identity of the controlled substance, the prosecutor explained why he opposed this instruction, and the trial court ultimately denied it. Defense counsel

then stated that she was "not conceding" the issue, and the trial court, "note[d]" her objection to the denial. This is sufficient to preserve this issue for purposes of Rule 10(a)(2).

¶ 42     With regard to the other issue—the knowing possession issue—the following exchange occurred:

> **[Trial Court]:** And then the other thing was –
>
> **[Prosecutor]:** That he knew that he possessed the cyclopropylfentanyl?
>
> **[Trial Court]:** Well, that he knew it was . . . . [Defense counsel] wants me to give an instruction saying that he had to know what it was he possessed.
>
> **[Defense Counsel]:** Correct, which is indicated in the footnote, and the case references State v. Boone, correct. And the testimony has been pretty consistent that he always said he didn't know what it was.
>
> . . .
>
> **[Trial Court]:** I am going to decline to give it, but you may argue . . . that it was not knowingly, that he didn't know what it was or whatever, but I just will not give that portion.
>
> **[Defense Counsel]:** And I understand, but again, it's the State's burden to prove that to both parts of that element.
>
> **[Trial Court]:** Yes. Okay. Anything else?
>
> **[Prosecutor]:** Well, just so I'm clear. So, are you allowing defense counsel to argue that the defendant did not know that he was possessing a scheduled controlled substance?
>
> **[Trial Court]:** She can argue that if she wants to . . . [S]he

> can say even if he possessed it, the law says it has to be knowingly, and we contend it's not knowingly.
>
> **[Defense Counsel]:** And that is a correct statement of the law.
>
> **[Prosecutor]:** Well, but I think the more correct statement of the law is that the possession is knowingly possessed, not knowingly possessed that substance.
>
> **[Trial Court]:** Well, knowingly possessed a controlled – knowingly modifies possessed.
>
> **[Prosecutor]:** Correct.
>
> **[Trial Court]:** Yes, but we're not saying knowingly possessed this gavel. I mean, you have to know what it is you're possessing.
>
> **[Defense Counsel]:** And the courts have consistently said that knowingly applies to that as well.
>
> **[The Court]:** I'm going to allow her to argue that, and I'll note your objection to it.

¶ 43        This exchange demonstrates that the second issue—the knowing possession issue—was also properly preserved. After defense counsel explained her reasoning for requesting the knowing possession instruction, the trial court responded that it would not give the instruction, but nevertheless would allow her to argue this issue to the jury. The prosecutor then sought to clarify what exactly the court was allowing defense counsel to argue to the jury, and noted that he thought defense counsel's argument was an incorrect statement of law. The court finally reiterated that nevertheless it would "allow her to argue that" and "*note your objection to it*."

¶ 44        The State argues that this exchange was ambiguous, and could have meant that the trial court was simply noting the prosecutor's objection to the court's decision to allow defense counsel to argue the knowing possession issue to the jury. Defendant, however, argues that this exchange represented the trial court noting defense counsel's objection to the denial of her earlier requested jury instruction. We agree with Defendant on this point—the objection which the trial court "noted" was defense counsel's objection to the jury instructions. The trial court's "note your objection to it" statement mirrors the language the trial court used to deny defense counsel's first objection to the earlier controlled substance instruction. Though it is true that defense counsel could have perhaps used clearer language in making her objection, as we have previously held "[t]he fact that counsel did not say the words 'I object' is not reason to deny appellate review" when counsel's intention was clear from the context. *State v. Rowe*, 231 N.C. App. 462, 470, 752 S.E.2d 223, 228 (2013).

¶ 45        We therefore hold that Defendant has preserved both of his jury instruction arguments for appellate review and that harmless error review is appropriate. *See State v. Steen*, 376 N.C. 469, 487, 852 S.E.2d 14, 26 (2020) ("[W]e evaluate the prejudicial effect of the delivery of [an erroneous] instruction using our traditional harmless error standard, which requires the defendant to show a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.") (internal marks

and citation omitted).

### 2. *Merits of the Requested Jury Instructions*

¶ 46        Defendant raises a two-fold challenge, arguing both that the trial court erred by failing to give his requested special jury instructions, and that the instructions which the court did provide misstated the applicable law.  In general, when a party requests a special jury instruction, a trial court "must give [the] requested instruction that is supported by both the law and the facts."  *State v. Nicholson*, 355 N.C. 1, 67, 558 S.E.2d 109, 152 (2002).  If the requested jury instruction contains no errors, the trial court should give the instruction to the jury "in substance"—though there is no requirement that the court use "the exact language requested" by the defendant.  *Id.* However, if the requested jury instruction contains any errors of fact or law, the trial court acts properly in refusing it.  *State v. Shepherd*, 156 N.C. App. 603, 609, 577 S.E.2d 341, 345 (2003).

¶ 47        As for Defendant's challenge to the jury instructions that were ultimately utilized by the trial court, we conduct a de novo review.  *See State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) ("Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court."). However, we are also mindful that "[i]nstructions that as a whole present the law fairly and accurately to the jury will be upheld," and that "one isolated piece that might be considered improper or wrong on its own will not be found sufficient to

support reversal." *State v. Roache*, 358 N.C. 243, 303-11, 595 S.E.2d 381, 419-24 (2004).

### a. *Identity of the Controlled Substances*

¶ 48 We first address whether the trial court erroneously invaded the province of the jury by instructing the jury that Cyclopropylfentanyl and N-ethylpentylone were controlled substances. Defendant requested the following special instructions regarding the two possession offenses:

> For you to find the defendant guilty of this offense, the State must prove beyond a reasonable doubt that the defendant knowingly possessed [substance] and that the defendant knew that what he possessed was [substance]. [Substance] may be, but you are not required to find that it is, a controlled substance.

¶ 49 The trial court declined to give these instructions, instead instructing the jury in accordance with N.C.P.I.-Crim. 260.10 that:

> [T]he defendant has been charged with possessing [substance], a controlled substance. For you to find the defendant guilty of this offense, the State must prove, beyond a reasonable doubt, that the defendant knowingly possessed [substance]. [Substance] is a controlled substance.

¶ 50 Defendant argues that because Cyclopropylfentanyl and N-ethylpentylone are not specifically listed as named controlled substances under Schedule I, *see* N.C. Gen. Stat. § 90-89 (2019), their identity was a factual matter within the province of the jury. Though there was expert testimony tending to show these were controlled

substances, Defendant asserts that it was still up to the jury to either believe or disbelieve this expert testimony.

¶ 51        We find Defendant's argument unavailing, and hold that the trial court properly denied Defendant's request to allow the jury to determine whether or not Cyclopropylfentanyl and N-ethylpentylone were controlled substances. We reach this holding for two reasons: (1) the classification of Cyclopropylfentanyl and N-ethylpentylone was a legal issue within the province of the trial court; and (2) even if the classification of these substances was a factual issue, Defendant was not prejudiced because the undisputed evidence demonstrated that Cyclopropylfentanyl and N-ethylpentylone were controlled substances.

¶ 52        First, it is well-established that it is the province of the trial court to instruct the jury on matters of law, while the jury should be left free to reach its own conclusions on matters of fact. *See State v. Cuthrell*, 235 N.C. 173, 174, 69 S.E.2d 233, 234 (1952). Whether a given substance is classified as a controlled substance under our criminal statutes is a legal issue that involves that application of legal reasoning. In North Carolina, the classification of controlled substances is governed by a "statutory framework" that "lists and categorizes various drugs, substances, and immediate precursors into six schedules." *State v. Williams*, 242 N.C. App. 361, 365, 774 S.E.2d 880, 884 (2015). Schedule I substances are those that "have been deemed to require the highest level of state regulations" and that have "a high potential for

abuse." *Id.* Chapter 90-89 of our General Statutes lists all of the various Schedule I substances, by both their "chemical and trade names." *Id.* However, the statute also contains a "catch-all" provision encompassing other Schedule I substances that are not specifically named therein. *Id.* This catch-all provision states that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated for the purposes of any State law as a controlled substance in Schedule I." N.C. Gen. Stat. § 90-89.1 (2019).

¶ 53 Here, Defendant is correct that Cyclopropylfentanyl and N-ethylpentylone do not expressly appear among the listed controlled substances in N.C. Gen. Stat. § 90-89. However, the trial court did not err in concluding as a matter of law—and in thereby instructing the jury—that these substances nonetheless constituted Schedule I controlled substances. The uncontroverted expert testimony at trial demonstrated that these substances were both controlled substance analogues fitting within the catch-all provision of Schedule I, with Cyclopropylfentanyl being a Schedule I fentanyl derivative and N-ethylpentylone being a Schedule I cathinone derivative.

¶ 54 Based on this undisputed evidence, we conclude that it was proper for the trial court to instruct the jury as a matter of law that these two substances were Schedule I controlled substances. *See State v. Smith*, 305 N.C. 691, 702-03, 292 S.E.2d 264, 272 (1982) (holding that the trial court did not invade the province of the jury in a

murder case by informing them that "there was no evidence of any just cause or legal provocation to kill," as this issue was "a matter of law, not of fact" and amounted to "little more than a summary of the pertinent evidence upon a particular aspect of the case"); *see also State v. Morgan*, 263 N.C. App. 711, 822 S.E.2d 909, 2019 WL 438575, at \*6 (2019) (unpublished) (holding that there was sufficient evidence to demonstrate that ethylone—a substance not specifically listed under Schedule I—was a controlled substance where an expert chemist "testified, with no objection or opposing evidence submitted by defense counsel, that ethylone [was] . . . a known Schedule I controlled substance").[3]

¶ 55    Moreover, even assuming *arguendo* that the trial court erred in instructing the jury that these were controlled substances, any such error was isolated and harmless. The uncontroverted record evidence demonstrated that Cyclopropylfentanyl and N-ethylpentylone were controlled substances. Adam Lewis of the SBI testified for the State as an expert in the forensic chemistry of controlled substances. Mr. Lewis identified the gray rock-like substance as 4.49 grams of Cyclopropylfentanyl—a fentanyl derivative compound. He stated that Cyclopropylfentanyl is a Schedule I controlled substance under Chapter 90 of the North Carolina General Statutes. Mr.

---

[3] We also note that the instruction provided to the jury corresponded with North Carolina Pattern Criminal Instruction 260.10—Possession of a Controlled Substance. "Use of the pattern instructions is encouraged." *State v. Garcell*, 363 N.C. 10, 49, 678 S.E.2d 618, 642 (2009).

Lewis identified the pill as N-ethylpentylone—a chemical compound similar to "bath salts," which is also included as a Schedule I controlled substance under Chapter 90.

¶ 56        Defendant did not object to Mr. Lewis' qualifications as an expert in the field of forensic chemistry of controlled substances, and Defendant offered no competing evidence to challenge Mr. Lewis' conclusion that these substances were controlled substances. Indeed, in defense counsel's closing argument, the defense expressly conceded that "[w]e're not going to debate that . . . it was a schedule one controlled substance," and that the defense "agree[d] for purposes of this argument that it was a controlled substance."

¶ 57        Accordingly, given that there was no evidence presented to the jury to suggest that Mr. Lewis' expert conclusions were incorrect, or to suggest that these substances were anything but controlled substances, defendant has failed to demonstrate any "reasonable possibility" that this alleged minor instructional error had any impact on the jury's ultimate verdict. *Steen*, 376 N.C. at 487, 852 S.E.2d at 26. *See also State v. Wells*, 290 N.C. 485, 497, 226 S.E.2d 325, 333 (1976) (holding that the trial court's factual instruction, "while erroneously invading the province of the jury, was not prejudicial" because all of the evidence supported this factual instruction and the defendant "never contended otherwise").

b. *Knowing Possession*

¶ 58        The final issue we must address is Defendant's contention that the jury

instructions failed to properly instruct the jury on the "knowing" element of the offense. To sustain a conviction for felony possession of a controlled substance, "the substance must be possessed and the substance must be knowingly possessed." *State v. Weldon,* 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985) (citation omitted). Defendant argues that here, because he denied knowing the identity of the substances that were found in his vehicle, he was entitled to a jury instruction informing the jury that he must have known that what he possessed was a controlled substance to be found guilty. Specifically, Defendant contends that the trial court should have instructed the jury in accord with Footnote 2 of the pattern jury instruction, which provides that:

> If the defendant contends that the defendant did not know the true identity of what defendant possessed, add this language to the first sentence [of the instructions]: "and the defendant knew that what the defendant possessed was (*name substance*). *S. v. Boone*, 310 N.C. 284, 291 (1984)."

N.C. P.I. Crime 260.10.

¶ 59    We disagree and find no error in this aspect of the jury instructions. Our Supreme Court has held that when a defendant denies knowing the identity of a controlled substance that he was found to possess, the issue of the defendant's knowledge becomes "a determinative issue of fact" about which the trial court should instruct the jury. *State v. Boone*, 310 N.C. 284, 294, 311 S.E.2d 552, 559 (1984), *superseded by statute on other grounds as recognized in State v. Oates*, 366 N.C. 264,

267, 732 S.E.2d 571, 573-74 (2012).

¶ 60　　This principle was recently explored in depth in *State v. Galaviz-Torres*, 368 N.C. 44, 772 S.E.2d 434 (2015). There, the defendant was convicted of trafficking in cocaine after 400 grams of cocaine were found in a gift bag on the floor of his van. *Id.* at 45-46, 772 S.E.2d at 435. However, he maintained that "he did not know that the van contained cocaine, and that the cocaine seized from the van did not belong to him." *Id.* at 46, 772 S.E.2d at 435. On appeal, the defendant argued that the trial court erred by failing to provide the jury with the footnote pattern jury instruction regarding knowing possession of a controlled substance[4]—asserting that the issue of his knowing possession was a material factual issue that should be decided by the jury. *Id.* at 48, 772 S.E.2d at 436-37.

¶ 61　　The Supreme Court first explained that while knowing possession is an element that typically may be implied from the circumstances of the crime,

> when a defendant denies having knowledge of the controlled substances that he has been charged with possessing or transporting, the existence of the requisite guilty knowledge becomes a determinative issue of fact about which the trial court must instruct the jury. As a result, given that defendant denied having knowingly possessed the cocaine found in the van that he was driving, the ultimate issue raised by [this case] is whether the trial court's instructions . . . adequately informed the jury that,

---

[4] The footnote pattern jury instruction requested by the defendant in *Galaviz-Torres* and the footnote jury instruction requested by Defendant here both contained identical language.

in order to convict defendant of the offenses with which he had been charged, it must find beyond a reasonable doubt that defendant actually knew that he had cocaine in his possession.

*Id*. at 49, 772 S.E.2d at 437.

¶ 62 After reviewing the relevant case law and the text of the requested footnote instruction, the Court ultimately concluded that the defendant was not entitled to the extra instruction because he had made a *wholesale denial* of any knowledge about the substances in his van. *Id*. The Court explained that the defendant might have been entitled to the extra instruction if he had simply denied knowledge "of the contents of the gift bag in which the cocaine was found," or if he had alternatively admitted that he possessed a substance "while denying any knowledge of the substance's identity." *Id*. at 51, 772 S.E.2d at 438. However, the defendant in *Galaviz-Torres* did neither—"[i]nstead, defendant simply denied having had any knowledge that the van he was driving contained either the gift bag or cocaine." *Id*. Thus, the Court concluded that,

> [a]s a result, since defendant did not contend that he did not know the true identity of what he possessed . . . the prerequisite for giving the instruction in question simply did not exist in this case. As a result, the trial court did not err by failing to deliver the additional instruction contained in [the requested footnote] in this case.

*Id*.

¶ 63 We conclude that *Galaviz-Torres* is controlling in the present case. Here,

although Defendant himself did not testify at trial, Officer Peeler described the statements that Defendant made to him during his arrest. Officer Peeler testified at various points that Defendant "denied having any illegal substances on him"; that Defendant "constantly said that he didn't know what none of it was"; and that Defendant "remained silent" when asked "who those substances belonged to."

¶ 64    Here, as in *Galaviz-Torres*, Defendant's statements to Officer Peeler amounted to a denial of any knowledge whatsoever that the vehicle he was driving contained drugs. Defendant never specifically denied knowledge of the contents of the cloth in which the drugs were wrapped, nor did he admit that the substances belonged to him while claiming ignorance of their identity. Accordingly, we similarly conclude that "the prerequisite for giving the instruction in question simply did not exist in this case." *Id.* at 51, 772 S.E.2d at 438. Moreover, we note that defense counsel here was still allowed to explain to the jury during closing arguments that knowing possession was a required element of the offense, and that the instructions provided by the trial court required the State to prove that "the defendant knowingly possessed [substance]" and was "aware of its presence." Accordingly, because the instructions provided by the trial court presented the law fairly and accurately to the jury, we find no error in the trial court's use of the pattern jury instruction here.

### III.    Conclusion

¶ 65    The trial court properly denied Defendant's motion to suppress evidence

because Officer Peeler possessed probable cause to search the vehicle based on the admissions of the passenger. The trial court committed no error in instructing the jury that Cyclopropylfentanyl and N-ethylpentylone were controlled substances as a matter of law. Defendant was not entitled to the special instruction on knowing possession of a controlled substance because he did not meet the prerequisite required to provide this instruction.

NO ERROR.

Judges COLLINS and GORE concur.