STATE OF NORTH CAROLINA v. RENNY DEANJELO MOBLEY

No. COA09-975

(Filed 3 August 2010)

**1. Evidence— hearsay—business records exception—authentication—no abuse of discretion**

The trial court did not abuse its discretion in a counterfeit controlled substances case in admitting under N.C.G.S. § 8C-1, Rule 803(6) an audio recording of a phone call made from the booking area of a police station. The call was properly authenti-

cated where testimony revealed the caller's voice was similar to defendant's, the caller identified himself as "Little Renny" (Renny being defendant's first name), and the caller dialed the same number as defendant's later calls from the jail. Moreover, even assuming *arguendo* that the trial court erred in admitting the recording, defendant failed to demonstrate prejudice.

**2. Drugs— conspiracy to sell counterfeit controlled substance—substantial evidence—motion to dismiss properly denied**

The trial court did not err in denying defendant's motions to dismiss the charge of conspiracy to sell a counterfeit controlled substance. The circumstances of defendant initiating contact with the undercover officers and brokering the drug buy provided substantial evidence to support defendant's conviction.

Appeal by plaintiff from judgment entered 11 February 2009 by Judge James W. Morgan Mecklenburg County Superior Court. Heard in the Court of Appeals 27 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Larissa S. Williamson for the State.*

*James N. Freeman, Jr., for defendant-appellant.*

STEELMAN, Judge.

The trial court did not abuse its discretion in admitting the 19 September 2007 booking-area phone call under Rule 803(6) where testimony revealed the caller's voice was similar to defendant's, the caller identified himself as "Little Renny," and the caller dialed the same number as defendant's later calls from the jail. The circumstances of defendant initiating contact with the undercover officers and brokering the drug buy provide substantial evidence to support defendant's conviction of conspiracy to sell a counterfeit controlled substance.

## I. Factual and Procedural Background

On 19 September 2007, Stephen Whitesel (Whitesel), an undercover narcotics officer with the Charlotte-Mecklenburg Police Department, conducted a street-level "buy bust" operation in the Westover Patrol Division of Mecklenburg County. The operation's arrest team followed closely in a "take down van" as Whitesel and his partner, Officer Dan Kellough (Kellough), drove to Watson Drive attempting to purchase crack cocaine or marijuana.

STATE v. MOBLEY

[206 N.C. App. 285 (2010)]

At or around 2:45 p.m., Whitesel and Kellough turned on to Watson Drive and saw defendant standing near a crowd gathered on a porch. As the officers approached the house, defendant "hollered and told [the officers] to turn around" and pointed to a place to park. Kellough parked the vehicle and Whitesel video-taped the drug buy with a hidden camera. Whitesel observed defendant approach a man, later identified as Rakeem McCullough (McCullough), who then walked into a nearby apartment and returned with a plastic bag.

Defendant and McCullough approached Whitesel on the passenger side of the vehicle and defendant asked Whitesel, "what do you need?" Whitesel stated, "just 40," which denoted forty dollar's worth of crack cocaine. McCullough was hesitant about the deal, but defendant stated that "these guys are straight, they ain't no police, they're straight." With defendant's reassurance, McCullough produced two small plastic baggies, each containing one rock of a "hard white substance." Whitesel paid McCullough forty dollars in marked bills for what the officers believed to be crack cocaine. A subsequent laboratory analysis revealed that it was .15 grams of a counterfeit controlled substance, not crack cocaine.

The officers drove away from defendant and gave the signal for the "take down units" to intercede, describing both defendant and McCullough as subjects for arrest. After defendant and McCullough were taken into custody along with two other men, Whitesel and Kellough identified defendant and McCullough as the persons who sold them crack cocaine. Defendant was transported to the Mecklenburg County jail. Defendant was charged with conspiracy to sell and deliver cocaine. A positive identification (PID) number is given to individuals as part of the intake process at the Mecklenburg County jail. The number consists of an inmate's fingerprint number and the last four digits of their social security number. If an inmate makes a phone call, they must first enter their PID number. Individuals still in the booking area have not yet been issued a PID number.

Inmates' telephone calls are recorded and the recordings are kept in the regular course of business at the Mecklenburg County jail. Although the county jail contracts with an outside company for the recording equipment, the recordings are unalterable and stored onsite at the jail. Once a call is recorded, it is tagged with "[t]he PID number, the area of the facility the call came from, the telephone it came from, the date, time, the number dialed" and can be transferred to a compact disk for use at trial.

Sergeant Jamie Brantley (Brantley) was employed by the Mecklenburg County Sheriff's office on 19 September 2007 and was assigned to monitor inmate telephone calls and create disks of those calls. Brantley made a compilation of the calls made from the booking area on 19 September 2007, which would have included any call defendant made before being issued a PID number. Brantley cross-referenced the compilation to the later calls listed under defendant's PID number and identified a call from the booking area on 19 September 2007 that matched the telephone number from defendant's later calls and featured an inmate voice similar to that of the defendant. At trial, Whitesel testified that he recognized defendant as being the caller in the call made from the booking area on 19 September 2007.

In the call made from the booking area, the caller identified himself as "Little Renny." The caller also stated that "I gave the little n—— the sh— to give him," and that "me, Mark and that other little n——" got arrested.

This case came on for trial on 9 February 2009. Defendant was tried for conspiracy to sell a counterfeit controlled substance. At the close of State's evidence and again at the close of defendant's evidence, defendant's motion to dismiss was denied.

The jury found defendant guilty of conspiracy to sell a counterfeit controlled substance. Defendant pled guilty to habitual felon status and was sentenced to 92 to 120 months imprisonment.

Defendant appeals.

## II. Recording of Call from Booking Area

**[1]** In his first argument, defendant contends that under N.C. Gen. Stat. § 8C-1, Rule 901(a), the telephone conversation submitted as State's Exhibit 13 under Rule 803(6) was not authenticated and that the admission of evidence constituted reversible error. We disagree.

### A. Standard of Review

Under Rule 803, cases are conflicting as to the appropriate standard of review. We review the trial court's determination to admit or exclude evidence for abuse of discretion. *State v. Williams,* 363 N.C. 689, 701, 686 S.E.2d 493, 501 (2009); *State v. Smith,* 315 N.C. 76, 97, 337 S.E.2d 833, 846 (1985). We refuse to overturn a judgment for abuse of discretion unless "the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been

the result of a reasoned decision." *Williams*, 363 N.C. at 701, 686 S.E.2d at 501 (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

### B.  Admission of State's Exhibit 13

Defendant contends that the State failed to authenticate the 19 September 2007 booking-area call because the caller could not be identified as defendant. Defendant argues that Brantley was not qualified to match the caller's voice to defendant's voice and a caller identifying himself as "Little Renny" was insufficient to establish that the caller was in fact defendant, Renny Mobley.

The booking-area call was marked as State's Exhibit 13 and admitted into evidence as a business record exception to the hearsay rule under Rule 803(6). Defendant's objection to the evidence on the grounds that the call could not be authenticated under Rule 901 was overruled. The evidence was supported by testimony from the record's custodian, Sergeant Brantley.

Rule 803(6) states in part that a business record is "[a] memorandum, report, record, or data compilation, in any form" of information provided by or from a person with knowledge and kept in the course of regular business activity as shown by the testimony of the custodian or other qualified witness. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2009).

An audio recording admitted under Rule 803 must nevertheless be authenticated under Rule 901. *State v. Stager*, 329 N.C. 278, 315-16, 406 S.E.2d 876, 897–98 (1991). Rule 901 permits authentication by evidence sufficient "to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2009). Thus, the issue is whether there is competent evidence that the booking-area caller was defendant.

A caller's identity may be established by testimony connecting the voice on the recording with defendant or by some circumstantial evidence. *State v. Williams*, 288 N.C. 680, 698, 220 S.E.2d 558, 571 (1975); N.C. Gen. Stat. § 8C-1, Rule 901(a). A witness' testimony as to the identity of the declarant "based on personal knowledge is all that is required to authenticate a tape recording." *Stager*, 329 N.C. at 317, 406 S.E.2d at 898. Sergeant Brantley testified that inmates' calls are recorded in the normal course of business and kept at the Mecklenburg County Jail according to the inmates' PID number. The call identified by Sergeant Brantley was made to the same number as

defendant's subsequent calls and featured a voice similar to defendant's subsequent calls. Whitesel, the undercover officer who interacted with defendant during the drug buy, also identified defendant as the caller in State's Exhibit 13.

In the booking-area call, the caller identified himself as "Little Renny," which includes defendant Renny Mobley's first name. The caller related that "me, Mark and that other little n———" got arrested and refers again to the "little n———" as the person who handled the substance. This is substantially similar to the circumstances of defendant's arrest. The State contended that the caller was referring to himself (defendant), Mark Murphy (Murphy), and McCullough. The fourth man taken into custody was given a citation for possession of drug paraphernalia and released at the scene. Only defendant, Murphy, and McCullough were arrested for conspiring to sell a substance, which only McCullough handled.

This circumstantial evidence authenticated the caller's identity in State's Exhibit 13. The trial court did not abuse its discretion in admitting the call into evidence. *Stager*, 329 N.C. at 318, 406 S.E.2d at 899.

Even assuming arguendo that the trial court admitted State's Exhibit 13 in error, defendant failed to demonstrate how the admission of the recording was prejudicial. N.C. Gen. Stat. 15A-1443(a) (2009). Whitesel and Kellough each testified that defendant was present at the drug buy. Whitesel and Kellough testified that defendant initiated contact with the officers, directed their car where to park, and brokered the sale by first asking Whitesel what he wanted and then encouraging McCullough to complete the sale. Based on Whitesel and Kellough's testimony and for the reasons stated *infra* regarding representation of the substance sold to Whitesel, there was substantial other evidence that defendant was guilty of conspiracy to sell a counterfeit controlled substance. Admission of State's Exhibit 13 was not prejudicial. *Id.*; *State v. Morgan*, 329 N.C. 654, 659, 406 S.E.2d 833, 835 (1991).

This argument is without merit.

### IV. Motion to Dismiss

[2] In his second argument, defendant contends that the trial court erred in denying his motions to dismiss because there was insufficient evidence that defendant knew the controlled substance sold to Officer Whitesel was counterfeit. We disagree.

**STATE v. MOBLEY**

[206 N.C. App. 285 (2010)]

### A. Standard of Review

We review denial of a motion to dismiss criminal charges *de novo*, to determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is relevant evidence that a reasonable mind would find adequate to support a conclusion. *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). We must consider evidence in a light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).

### B. Conspiracy to Sell a Counterfeit Controlled Substance

Defendant was convicted of conspiracy to sell a counterfeit controlled substance under N.C. Gen. Stat. § 90-95(a)(2), which states that it is unlawful to "create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance." Criminal conspiracy is an agreement of two or more persons to do an unlawful act or to do a lawful act by unlawful means and may be proven by direct or circumstantial evidence. *State v. Diaz*, 155 N.C. App. 307, 319, 527 S.E.2d 523, 531 (2002); *cert. denied*, 357 N.C. 464, 586 S.E.2d 271 (2003), *and cert. denied*, 357 N.C. 659, 590 S.E.2d 396 (2003), *and cert. dismissed*, —— N.C. ——, 632 S.E.2d 496 (2006).

A counterfeit controlled substance is "[a]ny substance which is by any means intentionally represented as a controlled substance." N.C. Gen. Stat. § 90-87(6)(b) (2009). Evidence that a counterfeit controlled substance has been intentionally represented as a controlled substance includes:

1. The substance was packaged or delivered in a manner normally used for the illegal delivery of controlled substances.

2. Money or other valuable property has been exchanged or requested for the substance, and the amount of that consideration was substantially in excess of the reasonable value of the substance.

3. The physical appearance of the tablets, capsules or other finished product containing the substance is substantially identical to a specified controlled substance.

N.C. Gen. Stat. § 90-87(6)(b).

Defendant argues that N.C. Gen. Stat. § 90-95(a)(2) requires defendant to knowingly have misrepresented a counterfeit controlled substance as an actual controlled substance. *State v. Bivens*, —— N.C. App. —— S.E.2d ——, (June 1, 2010) (No. COA09-483). *Bivens* held that "N.C. Gen. Stat. § 90-87(6) . . . requires only that the substance be 'intentionally represented as a controlled substance[,]' not that a defendant have specific knowledge that the substance is counterfeit." *Id.* at ——, ——, S.E.2d at —— (quoting N.C. Gen. Stat. § 90-87(6)(b)).

Whitesel asked for a "40," which denoted forty dollars worth of crack cocaine. McCullough then produced a hard, white substance packaged in two "small corner [baggies]." Both Whitesel and Kellough believed the substance sold to Whitesel was crack cocaine.

There is substantial circumstantial evidence that defendant intentionally represented the substance sold to Officer Whitesel as a controlled substance under N.C. Gen. Stat. § 90-87(6)(b). The substance was packaged in "small corner [baggies]," a practice normally used to deliver crack cocaine. N.C. Gen. Stat. § 90-87(6)(b)(1). Whitesel paid forty dollars for .15 grams of the substance. N.C. Gen. Stat. § 90-87(6)(b)(2). The two rocks of hard, white substance sold to Whitesel appeared to two veteran narcotics officers to be crack cocaine. N.C. Gen. Stat. § 90-87(6)(b)(3). Based on this evidence, a reasonable jury could infer that defendant intentionally represented the substance sold to Whitesel as a controlled substance and that the substance was therefore a counterfeit controlled substance.

Further, there is substantial evidence that defendant conspired with McCullough to sell a counterfeit controlled substance. Whitesel and Kellough's testimony demonstrated that defendant initiated contact with the officers and directed them where to park. Defendant spoke briefly with McCullough, who then entered a nearby apartment and emerged carrying a plastic bag which contained the substance. Both defendant and McCullough approached Whitesel, but it was defendant who brokered the deal, asking Whitesel what he wanted. When McCullough hesitated to complete the sale, defendant reassured him that Whitesel and Kellough were "straight, they ain't no police, they're straight." From these circumstances, a jury could reasonably infer that defendant conspired with McCullough to sell the substance.

The State was required to prove that defendant conspired to "create, sell or deliver . . . a counterfeit controlled substance." N.C.

**REGIONS BANK v. BAXLEY COMMERCIAL PROPS., LLC**

[206 N.C. App. 293 (2010)]

Gen. Stat. § 90-95(a)(2). Based on the packaging and delivery of the substance and the conduct of defendant, there is substantial evidence that defendant conspired to sell or deliver a counterfeit controlled substance. *Morgan,* 329 N.C. at 659, 406 S.E.2d at 835; *Bivens,* —— N.C. App. at ——, —— S.E.2d at ——.

This argument is without merit.

NO ERROR.

Judges McGEE and BEASLEY concur.