IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-965

Filed 7 May 2024

Mecklenburg County, Nos. 19CRS248208-09

STATE OF NORTH CAROLINA

v.

ROGELIO MARIN RAMIREZ

Appeal by Defendant from judgments entered 10 March 2023 by Judge David Hugh Strickland in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 April 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Michael T. Wood, for the State-Appellee.*

> *Drew Nelson for Defendant-Appellant.*

COLLINS, Judge.

Defendant Rogelio Ramirez appeals from judgments entered upon guilty verdicts of second-degree sexual offense and second-degree rape. Defendant argues that the trial court erred by prohibiting defense counsel from soliciting a response from the detective as to whether Defendant admitted to the alleged assault and by excluding the detective's testimony that he did not believe Defendant was being truthful during their conversation, and that the written judgments contain clerical errors. Because Defendant failed to preserve his argument that the trial court erred

by prohibiting defense counsel from soliciting a response from the detective as to whether Defendant admitted to the alleged assault, we dismiss in part. Furthermore, the trial court did not prejudicially err by excluding the detective's testimony that he did not believe Defendant was being truthful during their conversation, and we therefore find no prejudicial error in part. However, as the written judgments contain clerical errors, we remand the judgments to the trial court for correction of the clerical errors.

## I.    Background

The evidence at trial tended to show the following: On 14 December 2019, Deirdre Carroll and four friends went out for drinks. Throughout the evening, Carroll consumed alcohol until she was "really, really intoxicated" and was "swaying quite a bit [and] slurring her words[.]" Carroll's friend called an Uber at approximately midnight to take Carroll to her apartment a half-mile away. The driver dropped Carroll off at her apartment building and watched her walk inside; the driver observed that Carroll was very intoxicated and "could not stand up."

Carroll did not remember leaving the bar or arriving back at her apartment. However, Carroll eventually woke up naked on her couch and "[a] man [she] did not know had his penis inside of [her]." The man, later identified as Defendant, then "crawled up [her] body and stuck his penis in [her] mouth." At that point, Carroll lost consciousness.

Carroll woke up naked on her couch at approximately 8:00 a.m. with pain in

her head, elbow, and vagina. Carroll fell back asleep, and when she woke up at approximately 10:00 a.m., she noticed matted blood on her head. Carroll went to the hospital and told the hospital staff that someone had "penetrated [her] both vaginally and orally." A nurse performed a sexual assault examination, and a sexual assault evidence kit was collected. Carroll had a head wound that required four staples; several bruises on her arm, elbow, and chest; red knuckles and a swollen thumb; and a small laceration on her vulva. A nurse "took photographs of the head wound, photographs of [her] entire body, with the various bruises, including [her] vulva . . . [and] did an internal examination." The nurse also collected DNA samples from Carroll's fingernails, knuckles, external genitalia, and vagina.

Detective Michael Melendez with the Charlotte Mecklenburg Police Department arrived at the hospital to speak with Carroll at approximately 2:30 p.m. Carroll told Detective Melendez that "someone had assaulted [her] in [her] apartment and [she] did not know who that person was." Carroll also told him that her credit card and debit card were missing from her wallet, and that there had been two unauthorized transactions on her credit card at a gas station and Waffle House. Carroll later informed Detective Melendez that her pleasure device was missing from her bedroom.

A detective reviewed surveillance footage from the Waffle House, and the surveillance footage showed that Defendant used Carroll's credit card at approximately 6:19 a.m. on 15 December 2019.

After receiving information on 17 December 2019 about a vehicle connected to the case, Detective Melendez went to the address to which the vehicle was registered. Detective Melendez asked Defendant about the unauthorized credit card transactions, and Defendant stated that Carroll told him he could use the credit card. Detective Melendez asked Defendant if he could search his vehicle, and Defendant consented. Carroll's credit card, debit card, and pleasure device were found in Defendant's car.

A search warrant was subsequently issued for Defendant's phone. Defendant's phone contained a video of Carroll sitting on the toilet in her bathroom, which had been recorded at 2:10 a.m. on 15 December 2019. The phone also contained a photograph of Carroll's driver's license, which had been taken at 2:45 a.m. on 15 December 2019. A report of Defendant's location was generated based on his phone's GPS coordinates. The report showed that Defendant remained at Carroll's apartment building from 12:18 a.m. until 3:18 a.m. on 15 December 2019. The report also showed that Defendant then went to a gas station and Waffle House.

The DNA samples collected from Carroll's fingernails, knuckles, external genitalia, and vagina matched Defendant's DNA.

Defendant was indicted for second-degree forcible sexual offense and

second-degree forcible rape.[1]  The jury returned guilty verdicts of second-degree sexual offense and second-degree rape.  The trial court sentenced Defendant to 72 to 147 months' imprisonment for second-degree sexual offense and 72 to 147 months' imprisonment for second-degree rape.  Defendant appealed.

## II.    Discussion

### A. Whether Defendant Admitted to Alleged Assault

Defendant first argues that the trial court erred by prohibiting defense counsel from soliciting a response from Detective Melendez as to whether Defendant admitted to the alleged assault.  Defendant failed to preserve this argument for appellate review.

It is well settled that "[i]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Raines*, 362 N.C. 1, 20, 653 S.E.2d 126, 138 (2007).  Furthermore, "the essential content or substance of the witness'[s] testimony must be shown before we can ascertain whether prejudicial error occurred." *Id.* (citations omitted).  "Absent an adequate offer of proof, we can only speculate as to what a witness's testimony might have been." *State v. Jacobs*, 363 N.C. 815, 818,

---

[1] Defendant was also indicted for second-degree forcible sexual offense, second-degree forcible rape, and second-degree kidnapping stemming from an unrelated alleged assault.  However, Defendant was acquitted of these charges at trial.

689 S.E.2d 859, 861-62 (2010) (citations omitted).

Here, defense counsel asked Detective Melendez, "I would assume that because we did not hear it during the direct examination, that Mr. Ramirez did not admit to having nonconsensual sex with Ms. Carroll correct?" The State objected to the question and asked to be heard outside the presence of the jury. After discussion, the trial court sustained the objection. Defense counsel noted the objection for the record but then proceeded to discuss other questions without making an offer of proof. We cannot engage in speculation as to how Detective Melendez would have answered the question, and Defendant's argument is thus dismissed.

**B. Whether Detective Melendez Believed Defendant Was Being Truthful**

Defendant next argues that the trial court erred by excluding Detective Melendez's testimony that he did not believe Defendant was being truthful during their conversation.

We review the trial court's decision to exclude evidence for abuse of discretion. *State v. Mobley*, 206 N.C. App. 285, 288, 696 S.E.2d 862, 865 (2010). Evidentiary error does not necessitate a new trial unless the erroneous exclusion was prejudicial. *Jacobs*, 363 N.C. at 825, 689 S.E.2d at 865. To establish prejudice, a defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2023).

Even assuming arguendo that the trial court erred by excluding this testimony,

Defendant cannot establish prejudice in light of the overwhelming evidence of his guilt. The evidence at trial tended to show that on 14 December 2019, Carroll consumed alcohol until she was "really, really intoxicated" and was "swaying quite a bit [and] slurring her words[.]" Carroll's friend called an Uber at approximately midnight to take Carroll to her apartment a half-mile away. Carroll did not remember leaving the bar or arriving back at her apartment. However, Carroll woke up naked on her couch and "[a] man [she] did not know had his penis inside of [her]." The man, later identified as Defendant, then "crawled up [her] body and stuck his penis in [her] mouth." At that point, Carroll lost consciousness. Carroll went to the hospital the following morning, and a nurse performed a sexual assault examination and administered a sexual assault kit. The nurse collected DNA samples from Carroll's fingernails, knuckles, external genitalia, and vagina, which matched Defendant's DNA.

Defendant consented to a search of his vehicle, and Carroll's credit card, debit card, and pleasure device were found inside. A search warrant was subsequently issued for Defendant's phone. Defendant's phone contained a video of Carroll sitting on the toilet in her bathroom and a photo of Carroll's driver's license. The video had been recorded at 2:10 a.m. on 15 December 2019, and the photo had been taken at 2:45 a.m. on 15 December 2019. Furthermore, a report of Defendant's location was generated based on his phone's GPS coordinates. The report showed that Defendant remained at Carroll's apartment building from 12:18 a.m. until 3:18 a.m. on 15

December 2019. In light of this evidence, there is no reasonable possibility that, had the trial court admitted the testimony, a different result would have been reached at trial.

As Defendant has failed to establish prejudice from the trial court's ruling, the trial court did not prejudicially err by excluding Detective Melendez's testimony that he did not believe Defendant was being truthful during their conversation.

## C. Clerical Errors in the Judgments

Defendant argues, and the State concedes, that the written judgments contain clerical errors.

"When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v. Palacio*, 287 N.C. App. 667, 687, 884 S.E.2d 471, 485 (2023) (quotation marks and citation omitted).

Here, Defendant was indicted for second-degree forcible sexual offense and second-degree forcible rape. Prior to trial, the trial court omitted the term "forcible" from the indictments at the State's request. The trial court properly omitted the term "forcible" from its jury instructions and the verdict sheets. The jury subsequently returned guilty verdicts of second-degree sexual offense and second-degree rape. However, the written judgments both contain the term "forcible." Accordingly, we remand the judgments to the trial court for correction of the clerical errors.

## III.    Conclusion

Defendant failed to preserve his argument that the trial court erred by prohibiting defense counsel from soliciting a response from Detective Melendez as to whether Defendant admitted to the alleged assault.  Furthermore, the trial court did not prejudicially err by excluding Detective Melendez's testimony that he did not believe Defendant was being truthful during their conversation.  However, the written judgments contain clerical errors.  Accordingly, we dismiss in part and find no prejudicial error in part but remand the judgments to the trial court for correction of the clerical errors.

DISMISSED IN PART; NO PREJUDICIAL ERROR IN PART; REMANDED FOR CORRECTION OF CLERICAL ERRORS.

Chief Judge DILLON and Judge STADING concur.