IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-838

Filed 6 August 2024

New Hanover County, No. 18 CRS 59451

STATE OF NORTH CAROLINA

v.

ABIGAIL LYNN HOLLIS, Defendant.

Appeal by Defendant from Judgment entered 1 November 2022 by Judge Frank Jones in New Hanover County Superior Court. Heard in the Court of Appeals 15 May 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Torrey D. Dixon, for the State.*

*Patterson Harkavy LLP, by Christopher A. Brook, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Abigail Lynn Hollis (Defendant) appeals from her conviction for Embezzlement of Property Received by Virtue of Office or Employment in the Amount of $100,000 or More. The Record before us tends to reflect the following:

Defendant worked for American Fire Technologies (AFT) beginning in 2006. Her responsibilities included managing company purchases, billing, coordinating accounting functions, and data entry, including entering credit card purchases into

AFT's accounting system. As part of these responsibilities she would review AFT employees' monthly expenses on their respective corporate credit cards and submit approved purchases for payment by the company.

AFT issued Defendant a corporate SunTrust credit card to use for purchases which were authorized by the company. Defendant was also issued an Amazon card and could make approved expenditures on Amazon's website. Unlike other employees, Defendant reconciled her own records of payments with these cards and was not overseen by the company's Controller.

While making travel reservations for the company, Diane Coffin, an AFT administrative assistant, discovered records of two unusual airline tickets. These tickets, purchased with Defendant's corporate SunTrust credit card, were for first-class flights to the Bahamas and were in the name of Defendant's daughter and Defendant's daughter's fiancé. Coffin reported the tickets to her supervisor, Amanda Holtz, who served as AFT's Controller at the time.

Holtz noted that Defendant at times would fail to file statements for her corporate SunTrust credit card or would file PDF versions that looked different from the statements filed by other employees. When asked for clarification on these statements, Defendant sometimes responded vaguely or aggressively. After being notified of the purchase of the airline tickets, Holtz reviewed banking statements obtained from SunTrust and compared them to the spending reports and statements Defendant had entered into the company records. Her review revealed discrepancies

between the monthly statements obtained directly from SunTrust and those filed by Defendant, as well as additional expenses that did not appear to her to be justifiable business expenses. Holtz identified a total of $360,480.84 of suspicious transactions made between 2013 and 2018.

Paul Hayes, an owner of AFT, continued the investigation alongside his wife Paula, who was hired by the company to further evaluate the SunTrust and Amazon records. They compared the statements received from SunTrust and Amazon to those filed by Defendant, noting whether each individual record was for a legitimate business expense and to where purchased goods had been shipped. Statements submitted by Defendant to the company appeared to have been altered in multiple ways, including descriptions of purchases and the digits in the amounts of charges. Amazon purchases not authorized by the company included pet accessories, clothing, and furniture, totaling $23,335.58 in unauthorized purchases. Unauthorized purchases made with the SunTrust card included, among others, clothing, pet supplies, boat and vehicle expenses, and travel expenses. In total, the investigation revealed $188,815.35 of unauthorized purchases made with the SunTrust card.

Defendant was charged with Embezzlement in the Amount of $100,000 or More. Her case went to trial on 24 October 2022.

At trial, the State proffered the SunTrust and Amazon records of Defendant's credit card purchases, both of which were produced directly from the companies. In lieu of testimony of the records' custodians, each of these records was accompanied

by documents intended to authenticate them. The SunTrust records were accompanied by a "certification" signed by Nellie Robertson, described as "the custodian of records for SunTrust bank." The Amazon records were accompanied by a "Certificate of Authenticity" from Amazon Law Enforcement Response Specialist Anne Kurle. Each of these documents indicated it was signed under penalty of perjury, but neither was notarized or otherwise confirmed by oath or affirmation before an officer with the authority to administer such an oath.

The SunTrust records were initially admitted without objection. The State subsequently proffered the Amazon records, which Defendant objected to on authentication grounds. Defendant at that time also noted the same objection to the admission of the SunTrust records, while acknowledging they had already been admitted as evidence. The trial court admitted both sets of records into evidence.

The jury found Defendant guilty of Embezzlement, and the trial court sentenced her to 76-93 months' imprisonment. Defendant gave oral notice of appeal.

## Issue

The sole issue in this case is whether hearsay evidence presented under the business records exception—the SunTrust and Amazon records—may be properly authenticated by an affidavit made under penalty of perjury when that affidavit was not sworn before a notary public or other official authorized to administer oaths.

## Analysis

Generally, we review trial court decisions to admit or exclude evidence for

abuse of discretion. *Brown v. City of Winston Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006). But we review *de novo* a trial court's admission of evidence over a party's hearsay objection. *State v. Hicks*, 243 N.C. App. 628, 638, 777 S.E.2d 341, 348 (2015).

However, there is an apparent conflict in our caselaw as to our standard of review when the hearsay objection is rooted in the authentication of the proffered evidence. Under one line of cases, we have reviewed authentication of documentary evidence under the same *de novo* standard as the trial court's admission of such evidence. *See State v. Crawley*, 217 N.C. App. 509, 515, 719 S.E.2d 632, 637 (2011) ("A trial court's determination as to whether a document has been sufficiently authenticated is reviewed *de novo* on appeal as a question of law.") (citing *State v. Owen*, 130 N.C. App. 505, 510, 503 S.E.2d 426, 430 (1998)); *State v. Watlington*, 234 N.C. App. 580, 590, 759 S.E.2d 116, 124 (2014) (citing *Crawley*). In other cases, we have reviewed similar rulings for abuse of discretion. *See In re Foreclosure by Goddard & Peterson, PLLC*, 248 N.C. App. 190, 198, 789 S.E.2d 835, 842 (2016); *State v. Mobley,* 206 N.C. App. 285, 696 S.E.2d 862 (2010) (reviewing for abuse of discretion trial court's admission of jailhouse phone call over authentication objection).

We need not resolve this apparent conflict because this case hinges on a single question of law: whether a signed, but not notarized, document, made under penalty of perjury, is sufficient to authenticate evidence admitted under the business records exception to the rule against hearsay. A trial court abuses its discretion when it acts

under a misapprehension of law. *Cash v. Cash*, 284 N.C. App. 1, 7, 874 S.E.2d 653, 658 (2022). Thus, our analysis is the same whether reviewing under a *de novo* standard or for abuse of discretion.

The State argues that Defendant failed to preserve her arguments for appeal. Defendant timely objected to the admission of the Amazon records, preserving that issue for our review. Defendant in her brief concedes that her counsel failed to timely object to the admission of the SunTrust records but "specifically and distinctly" requests that we review that admission for plain error. N.C. R. App. P. 10(c)(4). Therefore, both evidentiary issues are properly before this Court on appeal, albeit under separate standards of review: harmless error for the Amazon records and plain error for SunTrust. *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). Before applying these separate standards of prejudice, however, we must first determine if the trial court erred by admitting the hearsay evidence in question.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2023). Hearsay statements are generally inadmissible unless they fall within an exception enumerated by our General Statutes or Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802.

One such exception to the general rule against hearsay is the business records exception, under which certain records of regularly conducted activity are admissible whether or not the declarant is available as a witness. N.C. Gen. Stat. § 8C-1, Rule

803(6) (2021).[1] These records are admissible if they are "(i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation[.]" *Id.* The records must be authenticated by a witness who is familiar with them and the system under which they are made. *State v. Wilson*, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985). That witness need not be the person who originally made the records. *In re S.D.J.*, 192 N.C. App. 478, 482-83, 665 S.E.2d 818, 821 (2008). Nor must that foundation be laid through testimony of a live witness: the foundational requirements of Rule 803(6) may be satisfied "by the testimony of the custodian or other qualified witness, or by affidavit or by document under seal of Rule 902 of the Rules of Evidence." N.C. Gen. Stat. § 8C-1, Rule 803(6). In lieu of live testimony, the proponent may submit:

> [a]n affidavit from the custodian of the records in question that states that the records are true and correct copies of records made, to the best of the affiant's knowledge, by persons having knowledge of the information set forth, during the regular course of business at or near the time of the acts, events or conditions recorded[.]

*In re S.W.*, 175 N.C. App. 719, 725, 625 S.E.2d 594, 598 (2006); N.C. Gen. Stat. § 8C-1, Rule 803(6).

---

[1] We note that our General Assembly has modified this rule subsequent to Defendant's trial. S.L. 2023-151. The rule now explicitly allows for authentication of business records "by a certification that complies with 28 U.S.C. § 1746 made by the custodian or witness." 28 U.S.C. § 1746 grants unsworn written statements made under penalty of perjury the same legal effect as a statement sworn to before a notary public. The modified Rule 803(6) went into effect 1 March 2024.

The State laid the foundation for both the Amazon and SunTrust records by presenting letters from employees of each company. The letter accompanying the SunTrust records is signed by Nellie Robinson and states that she is the custodian of records for SunTrust bank, the attached documents are true and accurate copies of business records made and kept in the course of regularly conducted business activity, made at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters. The Amazon records are accompanied by an email from Anne Kurle, a "Law Enforcement Response Specialist" who states the records are made in the ordinary course of business, were created at or near the time of the transactions or events reflected, were and kept as a part of a regular business activity. Each of these letters thus includes the statements necessary to authenticate their respective records.

Each letter also acknowledges that it was made under penalty of perjury. However, neither letter is notarized or otherwise indicates that it was sworn to before a notary or other public official. The question before us is whether these letters qualify as an "affidavit," as required by Rule 803(6), despite lacking a notarial seal.

The traditional definition of an affidavit requires that it be sworn to and subscribed before a notary public: "An affidavit is '(a) written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath.'" *Schoolfield v. Collins,* 281 N.C. 604, 612, 189 S.E.2d 208, 213 (1972) (quoting

*Affidavit, Black's Law Dictionary* (Rev. 4th ed. 1968). Generally, "[d]ocuments which are not under oath may not be considered as affidavits." *In re Ingram*, 74 N.C. App. 579, 580, 328 S.E.2d 588, 589 (1985).

This requirement is not universal, however, and our courts have recently begun to recognize circumstances under which affidavits are valid without having been witnessed by a notary. In *Gyger v. Clement,* our Supreme Court held that affidavits presented under N.C. Gen. Stat. § 52C-3-315(b), which applies to child support cases involving parties residing out of state, were not required to be notarized. 375 N.C. 80, 846 S.E.2d 496 (2020).

As the Court noted in that case, notarial signature is not required in all circumstances in all jurisdictions, and there are signs of a trend away from that requirement, particularly when statements are made under penalty of perjury. 375 N.C. at 85, 856 S.E.2d at 500. The Black's Law Dictionary definition of affidavit, for example, was modified in the Tenth Edition to define it as "a voluntary declaration of fact written down and sworn by a declarant, *usu[ally]*] before an officer authorized to administer oaths." *Affidavit, Black's Law Dictionary* (10th ed. 2014) (emphasis added). Likewise, in federal proceedings, "written declarations made under penalty of perjury are permissible in lieu of a sworn affidavit subscribed to before a notary public." 375 N.C. at 85, 846 S.E.2d at 500; *see* 28 U.S.C. § 1746. A statement given under penalty of perjury "alerts the witness of the duty to tell the truth and the possible punishment that could result if she does not." *Id.*

In holding Section 52C-3-315(b) did not require affidavits to be notarized if given under penalty of perjury, the Court noted that the legislature had enacted the statutory scheme to address "the challenges of interstate and international document production." 375 N.C. at 82, 846 S.E.2d at 499. The statute in question in that case is a subsection of N.C. Gen. Stat. § 52C-3-315, which creates "Special rules of evidence and procedure" for child support proceedings involving out-of-state parties. It provides:

> An affidavit, a document substantially complying with federally mandated forms, or a document incorporated by reference in any of them, which would not be excluded under the hearsay rule if given in person, is admissible in evidence if given under penalty of perjury by a party or witness residing outside this State.

N.C. Gen. Stat. § 52C-3-315(b).

The Court rejected the argument that this provision required affidavits filed under it to be notarized, recognizing that the plain language of "the provision instead simply requires an 'affidavit' to be 'given under penalty of perjury.'" 375 N.C. at 83, 846 S.E.2d at 499. It noted this was an exception to the general rule under our caselaw, which "expects affidavits to be notarized if they are to be admissible." *Id.* (citing *Alford v. McCormac,* 90 N.C. at 152-53 (1884)). The Official Commentary to the statutory scheme emphasized that it represented a "deviation from the ordinary rules of evidence" in order to facilitate interstate and international proceedings. *Id.* (citing N.C. Gen. Stat. § 52C-3-315 (2019), Official Comment (2015)). The statute also

mirrors the Uniform Interstate Family Support Act, which explicitly "replace[d] the necessity of swearing to a document 'under oath' with the simpler requirement that the document be provided 'under penalty of perjury.' Unif. Interstate Fam. Support Act § 316 (2001). The legislature recognized the difficulty of obtaining affidavits from international witnesses for use in child support claims, given that other nations have different legal practices than ours and "in certain locations obtaining notarization of affidavits may be impractical or impossible." *Gyger* at 84, 846 S.E.2d at 499. "If notarization were required for affidavits involving international parties, many relevant and helpful materials likely would not be presentable before the court." *Id.* at 84, 846 S.E.2d at 500.

Unlike in *Gyger,* this case does not "involve special rules of evidence due to special circumstances." 375 N.C. at 86, 846 S.E.2d at 501. However, it does involve affidavits made under penalty of perjury, which the court in *Gyger* recognized as a similar indicium of credibility as an oath before a notary:

> [A]ffidavits may be valid and acceptable in some circumstances even when not sworn to in the presence of an authorized officer.
>
> One such circumstance is when an affidavit is submitted under penalty of perjury. Affidavits without notarization may still be substantially credible. When a statement is given under penalty of perjury, it alerts the witness of the duty to tell the truth and the possible punishment that could result if she does not. *The form of the administration of the oath is immaterial*, provided that it involves the mind of the witness, the bringing to bear [of the] apprehension of punishment [for untruthful testimony].

- 11 -

375 N.C. at 85, 846 S.E.2d at 500 (emphasis added).

In a case virtually identical to this one, albeit unpublished and therefore uncontrolling, we have interpreted *Gyger* to allow authentication of business records via unnotarized affidavit made under the penalty of perjury. In *State v. Wilson,* the defendant was charged with embezzlement for writing unauthorized checks drawn on her employer's account. 286 N.C. App. 381, 878 S.E.2d 683, 2022 WL 16557419 at *1 (2022) (unpublished). The State introduced Wells Fargo bank records documenting the transactions, accompanied by "declarations from Wells Fargo employees declaring under penalty of perjury that the business records were accurate." *Id.* at *2. We held that, in light of *Gyger*, it was not error to admit the bank records. *Id.* at *3. We also recognized that, even if the trial court had erred, admitting the bank records was not an error so fundamental as to constitute plain error. *Id.*

Although *Wilson* does not control our decision in this case, we agree with its reasoning. The purpose of authentication is to show that "the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901. Defendant's argument that the affidavits in this case do not do so rests in the assumption that they are insufficiently credible if not sworn before a notary. However, each of the affidavits at issue in this case acknowledge that they were made under penalty of perjury, "bringing to bear the apprehension of punishment for untruthful testimony." *Gyger*, 375 N.C. at 85, 846 S.E.2d at 500. The purpose of an oath before a notary is to impart to the affiant the importance of stating the truth, and explicit acknowledgement of

the penalty of perjury evinces a similar level of credibility.

As the Court recognized, the legislature can explicitly require an affidavit be made under oath before an official and has done so when it deems it necessary in a particular context. *Gyger*, 375 N.C. at 85, 846 S.E.2d at 500 (citing N.C. Gen. Stat. § 52C-3-311 (2019)). Not only does Rule 803(6) contain no such explicit requirement, but the legislature has subsequently modified the statute to explicitly allow authentication via statements made under penalty of perjury, in accord with 28 U.S.C. § 1746. S.L. 2023-151; N.C. Gen. Stat. 8C-1, Rule 803(6) (2024). While our analysis is performed under the previous version of the statute, the legislature has made clear that notarization is not necessary to show an affidavit has the requisite credibility to authenticate business records.

We recognize that, following *Gyger,* our Supreme Court maintained that its opinion did not greenlight a general expansion of our definition of "affidavit" in all contexts. In *In re S.E.T.*, the petitioner in a termination of parental rights case attempted service by publication but failed to file an affidavit showing the "circumstances warranting the use of service by publication" as required by Rule 4(j1) of our Rules of Civil Procedure. 375 N.C. 665, 670, 850 S.E.2d 342, 346 (2020). She argued on appeal that her attorney's signature on the motion for leave to serve by publication satisfied the affidavit requirement because pleadings need not be accompanied by an affidavit but only signed by an attorney, and that signature certifies that the attorney "has read the pleading, motion, or other paper; that to the

best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . ." N.C. Gen. Stat. § 1A-1, Rule 11(a). The Court held that this did not obviate the requirement of an affidavit where that affidavit was specifically required by statute, and that despite the attorney's signature the motion could not be treated as an affidavit because it was not confirmed by an oath or affirmation. *S.E.T.*, 375 N.C. at 672, 850 S.E.2d at 347 n. 4 (Unlike the situation before the Court in our recent decision in *Gyger* . . . nothing in the statutory provisions at issue in this case in any way suggests that the term "affidavit" as used in N.C. G.S. § 1A-1, Rule 4(j1), should be understood in any way other than in its traditional sense).

*S.E.T.* is distinct from this case in at least two specific ways. First, the motion in *S.E.T.* did not explicitly acknowledge that it was made under penalty of perjury. Second, it was made in the context of service by publication, a method of service that is "in derogation of the common law," and therefore statutes authorizing it are strictly construed. *Harrison v. Hanvey*, 265 N.C. 243, 247, 143 S.E.2d 593, 596 (1965).

Similarly, un-notarized affidavits held insufficient in other cases, including those cited by Defendant, did not include an acknowledgement that they were made under penalty of perjury. In *State v. Lester* we held the trial court correctly excluded cell phone records that the State attempted to authenticate via signed affidavits from Verizon employees. 291 N.C. App. 480, 489, 895 S.E.2d 905, 911 (2023). None of the

affidavits indicated they were made under penalty of perjury. *See also In re Ingram*, 74 N.C. App. 579, 328 S.E.2d 588 (1985) (petition for involuntary commitment not made under oath could not be considered affidavit). Given *Gyger's* recognition that the penalty of perjury "alerts the witness of the duty to tell the truth and the possible punishment that could result if she does not," thereby making an un-notarized affidavit "substantially credible," 375 N.C. at 85, 846 S.E.2d at 500, this case is distinguishable from those.

The letters from SunTrust and Amazon employees, made under penalty of perjury and communicating that the records were made in the course of a regularly conducted business activity, made at or near the time of the activity by a person with knowledge of it, and that it was the regular practice of the business to make such a record, fulfill the purpose of authentication. The trial court did not reversibly err by admitting the records into evidence. Therefore, the records were properly considered by the jury in reaching its verdict. Consequently, the trial court did not err in entering judgment upon the jury verdict.

## Conclusion

Accordingly, for the foregoing reasons, there was no error at trial and the Judgment is affirmed.

NO ERROR.

Judges WOOD and STADING concur.